NORWEGIAN AMERICAN HOSPITAL, INC., Plaintiff-Appellant, v. THE DEPARTMENT OF REVENUE *et al.*, Defendants-Appellees.

First District (4th Division)   No. 1—90—0052

Opinion filed February 21, 1991.

David S. Morris, of Chicago, for appellant.

Neil Hartigan, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and Tanya Solov, Assistant Attorney General, of Chicago, of counsel), for appellees.

PRESIDING JUSTICE JIGANTI delivered the opinion of the court:

The plaintiff, Norwegian American Hospital, Inc., appeals from a ruling of the circuit court in which the court, upon administrative review of a decision of the defendant, the Illinois Department of Revenue, affirmed the denial of 1986 property tax exemptions for 25 parcels of real estate owned by the hospital.

In 1986, the plaintiff, Norwegian American Hospital, filed applications with the defendant, the Illinois Department of Revenue (Department), for real property tax exemptions on 68 parcels of property owned by the hospital and located in the vicinity of its main building. The revenue department granted tax-exempt status to 17 of the parcels and denied exemptions for the remaining 51 properties. Norwegian American requested evidentiary hearings on 49 of the nonexempted parcels. Following the formal hearings, the revenue department again denied exempt status to the 49 parcels of land. The hospital filed complaints for administrative review. Upon review of the revenue department's decision, the circuit court ruled that the Department had incorrectly found 24 of the parcels to be nonexempt. As to the remaining 25 parcels, the court ruled that the department had

correctly determined the parcels to be nonexempt properties. Upon a motion of Norwegian American Hospital for reconsideration of that portion of its decision affirming the Department of Revenue's findings, the circuit court issued a decision on reconsideration affirming its earlier decision. Norwegian American Hospital follows with this appeal.

Norwegian American Hospital is a not-for-profit 253-bed hospital located on the west side of Chicago. The main arterial boundaries of the hospital are Division on the north, California on the east, Augusta on the south, and Sacramento on the west. The 68 parcels of property originally under consideration are spread out in a one-quarter-mile area enclosed within the boundaries described. The hospital sits at the approximate center of the defined area.

During the administrative hearings held below, Norwegian American offered testimony to show that, in the late 1970s and early 1980s, the hospital administration became concerned over the hospital's diminishing census of patients and difficulty attracting staff members. The administration felt that the hospital's difficulties stemmed in part from dangers associated with the deteriorating apartment structures immediately surrounding the hospital. A decade ago, an event which came to be known as the "Puerto Rican Day" riots occurred in the area of the hospital. During the rioting, windows in the surrounding buildings were smashed and buildings were burned. At the time the hospital became concerned, gangs had taken up occupancy in the abandoned buildings and the neighborhood around the hospital had gained a reputation for dangerous criminal activity. Directly in front of the hospital, in view of the main entrance and patient rooms, was an area consisting of empty tenement buildings in disuse or disrepair which the administrators described as a "zone of blight." The hospital administrators became convinced that the neighborhood's condition and reputation dissuaded prospective employees from accepting positions with the hospital and discouraged patients from seeking the hospital's services.

The administrators were also concerned that the buildings in the area obstructed the hospital's visibility from the surrounding major thoroughfares, further discouraging potential patients. The administrators also pointed out that due to the location of the hospital in a highly congested area, parking for patients, staff, and visitors was limited.

In approximately 1982, administrators of Norwegian American Hospital turned the day-to-day management of the hospital over to a professional management services organization. In response to the

hospital's concerns about the surrounding neighborhood, the management organization and the hospital's real estate committee devised a plan to open up a "green" or campus-type environment in the area. In pursuit of the "campus plan," the hospital management consulted with architects and formalized a plan of development that was to include properties already owned by the hospital and parcels targeted for acquisition. The campus plan also included a corporate identity program which was intended to give a visual image to the hospital. The identity program included a sign and directional program involving the placement of six specifically designed monolith-type signs to be placed at various locations in the area. As implementation of the plan to create a park-like or campus atmosphere around the hospital proceeded, dilapidated buildings were razed, properties were seeded with grass or landscaped with flowers and trees, and pedestrian walkways, benches, and food service and picnic areas were installed. Parking lots were also created. The properties involved in the campus plan were not all contiguous to the hospital site or one another, but in some instances were scattered among private residences in the neighborhood. Hospital administrators testified that the purchase of contiguous property was not always possible. To the date of this dispute, the hospital has spent in excess of $1 million in a continuing effort to improve the sites surrounding the hospital.

In approximately 1984, the hospital commissioned a research firm to conduct a scientific study of the community. The results of the study indicated that the location of the hospital in an area of perceived danger was a significant factor in the minds of those community members considering whether to choose Norwegian American over any other health care facility. The study also indicated that the improvements Norwegian American had made to the area surrounding the hospital had increased its ability to attract people to its institution and had stimulated further growth and development in the immediate area.

At the conclusion of the evidence, the circuit court ruled that the revenue department had incorrectly determined 24 of the 49 parcels of property under review to be nonexempt. The court concluded that these 24 parcels were actually being used for hospital purposes: four parcels were part of a contiguous parking lot; a hospital directional sign was located on one parcel; the remaining parcels were used either to conservatively increase visual access to the hospital, provide picnic and recreation areas to the hospital employees and patients, or as sites for hospital structures or programs. The circuit court affirmed the revenue department's ruling as to 25 of the reviewed 49

parcels. The court ruled that because these properties were vacant, noncontiguous and scattered amongst private residences, and too far from the hospital to reasonably contribute to the hospital's visibility from neighboring thoroughfares, they did not qualify for tax-exempt status.

In appealing the status of those parcels of property which the circuit court determined were nonexempt properties, the hospital asserts that these parcels are, as were all of the 68 properties originally under consideration, part of the execution of the hospital's campus plan. The hospital maintains that the stated purpose and expressed need for the campus plan has not been challenged by the Department of Revenue. The hospital argues that as the campus plan is reasonably necessary to the accomplishment of the charitable objectives of the hospital, those properties developed under the plan should be considered tax exempt. See *MacMurray College v. Wright* (1967), 38 Ill. 2d 272, 230 N.E.2d 846.

The Department of Revenue, on the other hand, argues that Norwegian American has not met its burden of clearly and conclusively establishing that the challenged properties are entitled to tax-exempt status. (*People ex rel. County Collector v. Hopedale Medical Foundation* (1970), 46 Ill. 2d 450, 264 N.E.2d 4.) The department asserts that no healing, health care, or hospital administration took place on any of the parcels. Nor did the properties support either a hospital facility or sign. The Department argues that patients receive no direct benefit as a result of the function of the parcels, and that neighborhood beautification is not an endeavor which the hospital can use to classify the parcels as used actually and exclusively for charitable purposes. (Ill. Rev. Stat. 1985, ch. 120, par. 500.7.) The revenue department also maintains that because the hospital presented no evidence that it had adopted a formal resolution concerning the campus plan, the hospital has failed to prove that a concrete plan exists.

We believe that the 25 parcels at issue are part of a general plan of site improvement that is reasonably necessary to the continued survival and efficient administration of Norwegian American Hospital as a charitable institution. As such, we reverse that portion of the circuit court's ruling denying tax-exempt status to 25 of the submitted parcels of property.

■■■ The law in Illinois exempts from taxation that property of charitable institutions that is "actually and exclusively used for *** charitable or beneficent purposes." (Ill. Rev. Stat. 1985, ch. 120, par. 500.7.) Exclusive use refers to the primary purpose for which the property is being used, not a secondary or incidental purpose. (*North-*

*western Memorial Foundation v. Johnson* (1986), 141 Ill. App. 3d 309, 490 N.E.2d 161.) However, the property need not be absolutely indispensable for carrying out the purposes of the charitable institution. If the party seeking the exemption can establish that the property is used primarily for purposes reasonably necessary for the accomplishment and fulfillment of the institution's objectives and administration, an exemption will be sustained. (See *MacMurray College v. Wright* (1967), 38 Ill. 2d 272, 230 N.E.2d 846.) While it is the taxpayer's burden to prove its right to an exemption, each case requires a consideration of the particular fact pattern presented. *Evangelical Hospital Association v. Novak* (1984), 125 Ill. App. 3d 439, 465 N.E.2d 986.

We believe that the 25 subject parcels here under review are entitled to tax-exempt status. The uncontroverted evidence suggests that the survival of the hospital as a nonprofit, care-giving organization was threatened by the dilapidated and dangerous environment surrounding the hospital. The Department of Revenue has not challenged Norwegian American's perception that a plan of surrounding property improvement was necessary in order to increase patient census, prevent crime to patients, staff, and visitors, and increase parking and a clear sight line to major thoroughfares. The Department has offered no authority for the proposition that in order to claim tax-exempt status, the hospital must show that a formal corporate resolution was adopted by the hospital board. The record indicates that the development of the parcels was part of a comprehensive plan. The hospital's management met with the real estate committee to formulate the plan, architects were consulted, conceptual plans were developed, a corporate identity and sign program was created, parcels of land were purchased, and clearing and landscaping of the properties were implemented. The hospital also commissioned a formal study to measure the effectiveness of the plan. Based on the evidence presented, we believe that the hospital had embarked on an organized plan intended to improve access to the hospital and decrease the dangerous conditions of the surrounding area.

We do not believe that the fact that the parcels were vacant affects the determination that they were entitled to tax-exempt status. While intention to use is not equivalent to use, where actual development or adaptation has taken place, exemptions have been allowed. (*Weslin Properties, Inc. v. Department of Revenue* (1987), 157 Ill. App. 3d 580, 510 N.E.2d 564.) In the present case, we believe that the very fact that the parcels in question have been rendered vacant through the razing of abandoned structures supports the hospital's ar-

gument that the properties have been adapted to use. An unobstructed sight line to surrounding thoroughfares, a curb on criminal opportunism, and the creation of an open, park-like atmosphere are part of the stated goals of the hospital. The administrators also testified that the development of the properties was an ongoing project. In *Knox College v. Department of Revenue* (1988), 169 Ill. App. 3d 832, 523 N.E.2d 1312, the court observed that open spaces serving as a campus lawn were an integral part of a college campus. Similarly, we believe that where open spaces serve to address the concerns outlined above, they can be considered integral to the efficient administration of an urban hospital. (See also *Board of Appraisal Review for Travis County Appraisal District v. Protestant Episcopal Church Council* (Tex. Ct. App. 1984), 676 S.W.2d 616 (acreage described as necessary for access to the school, for the school's ornamentation and general use, and for providing a buffer against encroaching residential and commercial development, was properly found tax exempt).) We also do not believe that case law supports the notion that in order to qualify for exemption, the properties must be adjacent to the primary locus of the charitable organization. See *Evangelical Hospital Association v. Novak* (1984), 125 Ill. App. 3d 439, 465 N.E.2d 986; *Weslin Properties, Inc. v. Department of Revenue* (1987), 157 Ill. App. 3d 580, 510 N.E.2d 564.

■ Finally, we believe that under the reasonably necessary test articulated in *MacMurray College v. Wright* (1967), 38 Ill. 2d 272, 230 N.E.2d 846, the hospital need not prove that the subject parcels involved activity that directly related to the healing of patients in order to receive tax exemptions for the properties. The use of the property need not be absolutely indispensable to the hospital's purposes. (*Northwestern Memorial Foundation v. Johnson* (1986), 141 Ill. App. 3d 309, 490 N.E.2d 161.) The uncontroverted evidence in the present case was that the dangerous and dilapidated condition of the area surrounding the hospital was having a negative effect on patient census and efficient staffing of the hospital. We believe that these concerns have a sufficient nexus to the hospital's survival and efficient administration to qualify the hospital's response as reasonably necessary according to the spirit and letter of the statute. (See Ill. Rev. Stat. 1985, ch. 120, par. 500.7.) The hospital embarked on a comprehensive plan to alleviate the blight affecting its survival and administration. The parcels under review were developed in a manner consistent with the articulated plan: abandoned buildings were demolished, and the land was either seeded or more extensively landscaped. For these reasons we believe that the 25 parcels here under review do qualify for

tax-exempt status, and that portion of the circuit court's ruling which denied tax-exempt status to the subject parcels is reversed.

Reversed.

LINN and JOHNSON, JJ., concur.