MEMORIAL CHILD CARE, Plaintiff-Appellee, v. THE DEPARTMENT OF REVENUE, Defendant-Appellant.

Fourth District   No. 4—92—0309

Opinion filed November 30, 1992.

Roland W. Burris, Attorney General, of Springfield (Rosalyn B. Kaplan, Solicitor General, and Robert G. Toews, Assistant Attorney General, of Chicago, of counsel), for appellant.

J. Patrick Joyce, Jr., and Terry D. Charlton, both of Brown, Hay & Stephens, of Springfield, for appellee.

JUSTICE COOK delivered the opinion of the court:

Defendant Illinois Department of Revenue (Department) appeals the judgment of the circuit court of Sangamon County granting tax-exempt status to three tracts of land owned by plaintiff Memorial Child Care, Inc. (Child Care). Plaintiff operates a child-care center on the land for the benefit of its affiliate, Memorial Medical Center. On appeal the Department asserts that Child Care is not entitled to property tax exemption as a charitable or educational organization pursuant to section 19.7 of the Revenue Act of 1939 (Act) (Ill. Rev. Stat. 1989, ch. 120, par. 500.7). We affirm.

The following facts are not in dispute. Child Care and Memorial Medical Center are affiliated corporations under the parent not-for-profit corporation, Memorial Medical Center System. Memorial Medical Center is an acute-care hospital located in Springfield, which has previously been granted a property tax exemption as a hospital operated for charitable purposes. Child Care is a not-for-profit Illinois corporation with an exemption from the Internal Revenue Service for Federal income taxes. Child Care is located approximately one block west of the main hospital complex, and is situated on three contiguous parcels of property improved with a 12,000-square-foot one-story building. The entire building is devoted to the child-care center. Child Care filed separate applications for property tax exemptions for each of the three tracts for part of the 1987 and all of the 1988 tax years. In support of these claims, Child Care described itself in the applications as a not-for-profit corporation which provided "a day-care center for children of employees of Memorial Medical Center. No net income is derived from the use of said property. Fees charged for day-care do not cover cost of maintenance and operation." The Sangamon County Board of Review recommended approval of the applications and submitted them to the Department. The Department found the primary use of Child Care's property was neither charitable nor educational and denied the applications for exemptions. A formal administrative hearing was held at Child Care's request. Child Care argued it should re-

ceive property tax exemptions based on the charitable and educational nature of the day-care services provided to the employees of Memorial Medical Center.

Paul Smith, chief financial officer and senior vice-president for Memorial Medical Center System, testified concerning the motivation for building the child-care center. In the early 1980's Memorial Medical Center conducted a study because the hospital was experiencing some instability with its staff, especially the nursing department. The study determined that the young professional staff at the hospital had difficulty obtaining child care due to a lack of adequate day-care facilities in the community. Child Care was developed and built to provide a day-care facility that could correspond to the scheduling needs of the employees of the hospital. Child Care's admission policy limited the enrollment to children of the employees of the affiliated corporations of Memorial Medical Center System. The fees charged by Child Care for day-care services were comparable to other facilities in Springfield. Child Care was built with the intention of being a self-supporting operation; however, it has required a subsidy from Memorial Medical Center to meet its expenses. Smith testified that although Child Care was not breaking even, it was still fulfilling the needs of the hospital because of the valuable service provided to the hospital employees.

Joyce Spier, director of Child Care, also testified at the administrative hearing. Spier was a member of the human resource task force which worked for three years investigating the hospital's need for a child-care facility. The task force determined that because adequate child-care for hospital employees was not available in the community, the hospital needed to operate its own facility. Spier stated that this finding was subsequently confirmed by a study by the League of Women Voters which also documented the shortage of child-care in the Springfield area. Spier stated that the biggest difference between Child Care and the other day-care centers in Springfield was the hours of operation. Child Care was open from 5:30 a.m. until midnight, seven days per week. Spier testified that Child Care stayed open until the last child went home, usually close to midnight, but that the Child Care staff stayed as long as required to meet the needs of the hospital employees. Because part-time employees had a particularly difficult time finding a flexible child-care program, Child Care offered both a weekly rate and a daily rate. Child Care did not offer free services based on need or for any other reason. Child Care is used by approximately 140 employees; about half of those are from the department of nursing.

Spier also testified about the educational component of Child Care's services. Each age group had daily activities designed to include math, science, art, language, and music. The lessons also included development of fine and gross motor skills. The preschool program was usually held between 9 a.m. and 11 a.m., with instructional activities held on weekends as well.

The administrative law judge recommended denial of the property tax exemptions. The Department accepted the recommended disposition and denied Child Care's applications. The Department determined that Child Care was not a preschool because the children were not present on a daily basis, and because the children enrolled in the evening participated in significantly fewer activities. In addition, the Department determined that Child Care was not a charitable institution because it did not meet the guidelines of a charitable operation as set out by the supreme court in *Methodist Old Peoples Home v. Korzen* (1968), 39 Ill. 2d 149, 233 N.E.2d 537. The Department rejected Child Care's argument that the day-care operation was reasonably necessary to fulfill the charitable objectives of Memorial Medical Center.

Child Care filed a complaint for administrative review in the circuit court of Sangamon County. The circuit court reversed the decision of the Department, finding the Department's decision in denying Child Care's property tax exemptions was against the manifest weight of the evidence and contrary to law. The circuit court held that Child Care was entitled to exemption from real estate taxes pursuant to section 19.7 of the Act because Child Care's activities were "reasonably necessary" to further the charitable objectives of Child Care's acute-care hospital affiliate, Memorial Medical Center, and to allow for the more efficient administration of the hospital. The Department appeals the circuit court's order.

■ Although Illinois charitable institutions are entitled to an exemption from property taxes, such exemptions are to be narrowly construed. (*Rogers Park Post No. 108 v. Brenza* (1956), 8 Ill. 2d 286, 289-90, 134 N.E.2d 292, 295; see also *City of Chicago v. Illinois Department of Revenue* (1992), 147 Ill. 2d 484, 491, 590 N.E.2d 478, 481.) Article IX of the Illinois Constitution provides the taxing authority for the State and establishes the types of property which may obtain an exemption from taxation:

> "The General Assembly by law may exempt from taxation only the property of the State, units of local government and school districts and property used exclusively for agricultural and horticultural societies, and for school, religious, cemetery

and charitable purposes. The General Assembly by law may grant homestead exemptions or rent credits." (Ill. Const. 1970, art. IX, §6.) In accordance with this provision, the legislature has provided a tax exemption for charitable organizations in section 19.7 of the Act by exempting:

"All property of institutions of public charity, all property of beneficent and charitable organizations, *** when such property is actually and exclusively used for such charitable or beneficent purposes, and not leased or otherwise used with a view to profit ***." Ill. Rev. Stat. 1989, ch. 120, par. 500.7.

■■ A determination whether an exemption exists is a question of law where, as in this case, the facts are not in dispute. (*Harrisburg-Raleigh Airport Authority v. Department of Revenue* (1989), 126 Ill. 2d 326, 331, 533 N.E.2d 1072, 1073.) Thus, the decision as to whether property is exempt depends solely upon the application of the appropriate legal standard to the undisputed facts. (*City of Chicago*, 147 Ill. 2d at 491, 590 N.E.2d at 481.) Property may qualify for a charitable exemption if the use of the property is exclusively charitable (*Methodist Old Peoples Home*, 39 Ill. 2d at 156-57, 233 N.E.2d at 541-42), or "reasonably necessary" for accomplishing the goals of a charitable organization (*MacMurray College v. Wright* (1967), 38 Ill. 2d 272, 278, 230 N.E.2d 846, 850).

■■ Here, the Department determined that Child Care did not qualify as an organization devoted exclusively to charitable purposes within the meaning of section 19.7 of the Act. As a general rule, a reviewing court will give deference to an administrative agency's interpretation of the statute it was created to enforce (*City of Decatur v. American Federation of State, County, & Municipal Employees, Local 268* (1988), 122 Ill. 2d 353, 361, 522 N.E.2d 1219, 1222), although it is not the same measure of deference given to the agency's findings of fact. (*Harrisburg-Raleigh*, 126 Ill. 2d at 331, 533 N.E.2d at 1073-74.) The Department argues in this appeal that Child Care does not qualify as an organization devoted exclusively to charitable purposes under the *Methodist Old Peoples Home* test for determining when an organization qualifies for the exemption on charitable grounds. (*Methodist Old Peoples Home*, 39 Ill. 2d at 156-57, 233 N.E.2d at 541-42.) Although Child Care, similar to its affiliate Memorial Medical Center, is a not-for-profit corporation and has been granted exemption from payment of Federal income tax under section 501(c)(3) of the Internal Revenue Code of 1939

(26 U.S.C. §501(c)(3) (1988)), Child Care does not contend that fact, standing alone, qualifies it for a charitable exemption under the standard set forth in *Methodist Old Peoples Home*. Child Care does, however, contend that its services are "reasonably necessary" for the efficient administration of its affiliate, Memorial Medical Center, which the Department determined was a charitable organization for purpose of property tax exemptions on other real estate. Child Care contends its services allow Memorial Medical Center to fulfill its charitable objectives of providing quality health care to all patients regardless of race, religion, sex, national origin, or economic status.

In *MacMurray College* the supreme court considered whether faculty and staff housing facilities were used exclusively for school purposes and, therefore, exempt from property taxation. The court phrased the standard in the following terms:

"A party seeking tax exemption for staff housing facilities as property exclusively used for school purposes obviously must do more than merely show that the property is owned by the school and occupied by school personnel. There must be use exclusively for school purposes. However, one is not required to show that the use of the property is absolutely indispensable for carrying out the work of the institution. [Citation.] The primary use of the property, not its incidental uses, determines its tax exempt status. [Citation.] Exemption will be sustained if it is established that the property is primarily used for purposes which are *reasonably necessary* for the accomplishment and fulfillment of the educational objectives, or efficient administration, of the particular institution." (Emphasis added.) (*MacMurray College*, 38 Ill. 2d at 278, 230 N.E.2d at 850.)

The court then analyzed the nature of the faculty housing and determined that it was primarily residential and not educational. Therefore, the colleges were not entitled to exemptions for faculty and staff housing facilities since the facilities were not reasonably necessary for the educational objectives or administrative efficiency of the college. *MacMurray College*, 38 Ill. 2d at 278-79, 230 N.E.2d at 850.

In *McKenzie v. Johnson* (1983), 98 Ill. 2d 87, 456 N.E.2d 73, the supreme court used the *MacMurray College* standard to determine whether a statutory exemption for parsonages was unconstitutional because it impermissibly broadened the constitutional exemption for property used exclusively for religious purposes. In holding the stat-

utory exemption constitutional, the court quoted the above language from *MacMurray College* and then stated:

> "Under the *MacMurray* standard a parsonage qualifies for an exemption if it *reasonably and substantially facilitates* the aims of religious worship or religious instruction because the pastor's religious duties require him to live in close proximity to the church or because the parsonage has unique facilities for religious worship and instruction or is primarily used for such purposes. \*\*\* Whether a particular parsonage may be entitled to exemption turns on the evidence showing how the parsonage is being used \*\*\*." (Emphasis added.) (*McKenzie*, 98 Ill. 2d at 99-100, 456 N.E.2d at 79.)

The Department contends that in *McKenzie* the supreme court clarified the *MacMurray College* "reasonably necessary" standard by adopting a more stringent "reasonably and substantially" necessary test. This position is not supported by *McKenzie* and has not been accepted in other tax exemption cases. (See *Evangelical Hospital Association v. Novak* (1984), 125 Ill. App. 3d 439, 443, 465 N.E.2d 986, 988 (the *MacMurray College* "reasonably necessary" test was "reaffirmed in *McKenzie*"); *Northwestern Memorial Foundation v. Johnson* (1986), 141 Ill. App. 3d 309, 313, 490 N.E.2d 161, 164 (applied the *MacMurray College* "reasonably necessary" test); *Norwegian American Hospital, Inc. v. Department of Revenue* (1991), 210 Ill. App. 3d 318, 324, 569 N.E.2d 83, 87 (applied the *MacMurray College* "reasonably necessary" test).) The standard used in *McKenzie* was the same as the standard used in *MacMurray College*. In *McKenzie*, the supreme court reaffirmed the "reasonably necessary" standard by stating that the use of the property must "reasonably and substantially facilitate[ ]" the charitable goals. *McKenzie*, 98 Ill. 2d at 99, 456 N.E.2d at 79.

There are no Illinois cases which have determined whether a child-care center is reasonably necessary for the efficient operation of a charitable hospital. However, Illinois courts have held that property used as hospital administrative and support services (*Evangelical Hospital Association*, 125 Ill. App. 3d 439, 465 N.E.2d 986), property used as a hospital employee parking lot (*Northwestern Memorial Foundation*, 141 Ill. App. 3d 309, 490 N.E.2d 161), and the reclamation of property containing abandoned and gang-infested buildings surrounding a hospital (*Norwegian American Hospital, Inc.*, 210 Ill. App. 3d 318, 569 N.E.2d 83) qualify for the property tax exemption.

In *Evangelical Hospital Association,* the court held that property used to house the administrative offices of five hospitals was reasonably necessary under *MacMurray College* and *McKenzie.* The court found that the administrative offices were exempt from property tax, although they were separated from the hospital, because they were reasonably necessary for the efficient administration of the hospital system. *(Evangelical Hospital Association,* 125 Ill. App. 3d at 442-43, 465 N.E.2d at 988-89.) In *Northwestern Memorial Foundation,* the court permitted an exemption for a hospital employees' parking lot. The court took judicial notice of the fact that the hospital complex was located in a densely populated urban area which necessitated adequate employee parking. *(Northwestern Memorial Foundation,* 141 Ill. App. 3d at 313, 490 N.E.2d at 164.) Moreover, the court noted the existence of a statutory provision specifically exempting parking lots used by non-profit hospitals. *(Northwestern Memorial Foundation,* 141 Ill. App. 3d at 312, 490 N.E.2d at 163, quoting Ill. Rev. Stat. 1989, ch. 120, par. 500.16.) The area surrounding the hospital in *Norwegian American Hospital, Inc.* was deteriorating into a gang-infested area with a reputation for dangerous criminal activity. *(Norwegian American Hospital, Inc.,* 210 Ill. App. 3d at 320, 569 N.E.2d at 84-85.) The court found the hospital's plan to reclaim the land and turn it into part of the hospital's campus "reasonably necessary to the continued survival and efficient administration" of the hospital. *Norwegian American Hospital, Inc.,* 210 Ill. App. 3d at 322, 569 N.E.2d at 86.

While it is the taxpayer's burden to prove its right to an exemption, each case requires consideration of the particular facts presented. *(Norwegian American Hospital, Inc.,* 210 Ill. App. 3d at 323, 569 N.E.2d at 86, citing *Evangelical Hospital Association,* 125 Ill. App. 3d 439, 465 N.E.2d 986.) In the instant case, Child Care operated a child-care center for the employees at Memorial Medical Center. The record indicates that Springfield had a shortage of child-care facilities, and that the employees of Memorial Medical Center had difficulty finding child-care available which met their needs and fit the hospital scheduling requirements. Child Care's facility was specifically organized to provide a flexible child-care program for the employees of Memorial Medical Center. The hours of operation of the facility are from 5:30 a.m. to midnight, seven days a week, including holidays. Child Care offers variable services for employees, such as a daily rate for part-time employees because department schedules often include work on weekends. Child Care's hours of operation were specifically structured for Memorial Medi-

cal Center employees and are more flexible and of longer duration than those of commercial day-care centers. Child Care was created specifically as a not-for-profit corporation to alleviate the difficulty Memorial Medical Center experienced in hiring and maintaining employment of professional employees with young children.

■ The use of the property at issue is for a purpose reasonably necessary to accomplish the efficient administration of Memorial Medical Center as a tax-exempt charitable hospital under the Act. The facility enables Memorial Medical Center to better serve the needs of central Illinois by allowing the hospital to attract and retain quality nurses and other medical professionals. Although Memorial Medical Center functioned for years without a child-care center, this alone does not show that a child-care center for employees of the hospital is not essential to the operation of the hospital. (See *Northwestern Memorial Foundation*, 141 Ill. App. 3d at 313, 490 N.E.2d at 164.) In this case, the availability of secure, flexible child care is more than a mere convenience; it is a necessity that directly affects an employee's willingness and ability to provide much needed services to Memorial Medical Center and the community. Child Care's use of the property is primarily for purposes reasonably necessary to accomplish the efficient administration of the hospital, and therefore the three parcels should be exempt from property taxation pursuant to section 19.7 of the Act.

Child Care argues in the alternative that it qualifies for a property tax exemption as an educational institution in accordance with section 19.7 of the Act. Given that Child Care qualifies for property tax exemption in accordance with the exemption for charitable institutions, we find no need to determine whether Child Care should be granted tax exemption as an educational institution.

Accordingly, we affirm the judgment of the circuit court of Sangamon County.

Affirmed.

STEIGMANN and LUND, JJ., concur.