IN THE MATTER OF: THE MOSES H. CONE MEMORIAL HOSPITAL (92 PTC 28) & ROGER C. COTTEN (90 PTC 485)

No. 9310PTC230

(Filed 15 February 1994)

1. **Taxation § 99 (NCI4th) — county tax assessor — appeal as individual — no standing to appeal from Property Tax Commission**

   Respondent, the Guilford County Tax Assessor, had no standing to appeal, in either his official or his individual capacity, to the Property Tax Commission, and the Commission had no jurisdiction to hear respondent's appeal, since appeal to the Commission from a local county board of equalization and review is governed solely by N.C.G.S. § 105-290(b); that statute provides for appeal only by a property owner and conspicuously omits a right of appeal by a county or any county official; and to allow respondent to appeal in his individual

IN RE MOSES H. CONE MEMORIAL HOSPITAL

[113 N.C. App. 562 (1994)]

capacity a decision of the Board which he could not otherwise appeal would improperly circumvent the Legislature's intent and the Court's holding in *In re Appeal of Forsyth County*, 104 N.C. App. 635.

**Am Jur 2d, State and Local Taxation §§ 782-787, 795-816, 831, 832.**

2. **Taxation § 30 (NCI4th) — taxpayer as charitable hospital — stipulations sufficient to satisfy statute**

Stipulations by the parties to the effect that taxpayer was organized as a North Carolina nonstock, nonprofit hospital which was open to all citizens and which did not deny emergency treatment to patients unable to pay for their care satisfied the requirements of N.C.G.S. § 105-278.8, and the Commission erred in concluding that taxpayer failed to show by any stipulated facts that taxpayer was a charitable hospital pursuant to N.C.G.S. § 105-278.8.

**Am Jur 2d, State and Local Taxation §§ 362 et seq.**

3. **Taxation § 30 (NCI4th) — hospital's child care center — no competition with commercial day care centers — Commission's finding error**

The Property Tax Commission erred in finding that taxpayer's child care center competed directly with commercial day care centers and that taxpayer's center was of little or no benefit to the hospital in recruitment, since the child care center was open only to taxpayer's employees and not the public at large; by remaining open seven days a week, on holidays, and for extended hours, taxpayer's child care center met a need of its employees which could not be fulfilled by commercial day care centers; and two witnesses presented uncontradicted evidence that taxpayer's child care center enabled it to be more competitive in recruiting employees.

**Am Jur 2d, State and Local Taxation §§ 362 et seq.**

4. **Taxation § 30 (NCI4th) — hospital's child care center — reasonably necessary to accomplish charitable purpose — property exempt**

Taxpayer's child care center served a charitable hospital purpose as contemplated by N.C.G.S. § 105-278.8 and was thus exempt from ad valorem taxes, since the center was not operated

IN RE MOSES H. CONE MEMORIAL HOSPITAL

[113 N.C. App. 562 (1994)]

for the purpose of making money, but was instead located on hospital property and used to recruit and retain hospital employees; the child care center was organized to meet the specific needs of hospital employees; its hours of operation were longer and more flexible than other area commercial day care centers; and taxpayer's child care center was thus reasonably necessary to accomplish taxpayer's charitable purpose.

**Am Jur 2d, State and Local Taxation §§ 362 et seq.**

Appeal by taxpayer from order of the North Carolina Property Tax Commission entered 24 November 1992. Heard in the Court of Appeals 8 December 1993.

Moses H. Cone Memorial Hospital (hereinafter taxpayer) is a nonstock, nonprofit, general acute care hospital located in Greensboro, North Carolina. Taxpayer is open to all citizens of Guilford County and adjacent counties without regard to race, religion, creed or national origin. Taxpayer also does not deny emergency medical treatment to patients who cannot afford to pay.

In October 1989, taxpayer opened a child care center in a free-standing building on the hospital campus. The child care center is available only to hospital employees and is open seven days a week from 6:00 a.m. to midnight. Taxpayer subsidizes approximately $160,000 of the annual operating costs of the child care center.

In 1990, Guilford County assessed taxpayer $6,936.15 in ad valorem taxes for its child care center. Taxpayer filed an application for exemption pursuant to G.S. 105-278.8 which was denied by the Guilford County Tax Department (hereinafter Tax Department). The Guilford County Board of Equalization and Review (hereinafter the Board) reversed the decision of the tax department and determined that taxpayer's child care center was exempt from ad valorem taxation. The Guilford County Tax Assessor, Mr. Roger C. Cotten, appealed this decision to the Property Tax Commission in his individual capacity (90 PTC 485).

In 1991, taxpayer's child care center was again assessed ad valorem taxes. Taxpayer filed another application for exemption which was again denied by the Tax Department. Taxpayer appealed again to the Board of Equalization and Review. Although faced with essentially the same facts about the child care center as the

IN RE MOSES H. CONE MEMORIAL HOSPITAL

[113 N.C. App. 562 (1994)]

year before, the Board determined that taxpayer's child care center was not exempt from taxation. Taxpayer appealed this decision to the Property Tax Commission (92 PTC 28).

These two appeals (90 PTC 485 and 92 PTC 28 hereinafter 1990 appeal and 1991 appeal respectively) were consolidated for hearing before the Property Tax Commission on 23 June 1992. Taxpayer presented the testimony of four witnesses: 1) Ms. Cynthia Schaub, 2) Ms. Sharon Fouts, 3) Ms. Stephanie Fanjul and 4) Ms. Beverly Randolph Harrelson. Ms. Schaub is the Vice President of Human Resources at Moses H. Cone Memorial Hospital and is responsible for the hospital's recruitment and retention of health care employees. Ms. Schaub testified that taxpayer's child care center enabled the hospital to recruit employees more competitively with other area hospitals who also offered on-site child care for their employees. Ms. Schaub named several area hospitals that also had on-site day care. Ms. Schaub also testified that commercial day care centers could not accommodate the fluctuating need of hospital employees who worked rotating shifts and that there were no commercial day care centers that offered child care after 7:00 p.m.

Ms. Sharon Fouts is the director of taxpayer's child care center. Ms. Fouts testified that the child care center is able to accommodate the needs of parents who work flexible hours or need to work in the evenings. "If one week they work 6:00 a.m. to 3:00 p.m., or the next week two-thirty until twelve o'clock, we are able to accommodate those needs." Ms. Fouts testified that she did not know of any other child care facility in Greensboro that was open from 6:00 a.m. until midnight, seven days a week. Ms. Fouts testified that between 12 to 18 children used the child care center from 6:30 p.m. until midnight. Ms. Fouts also testified that the child care center had a waiting list of approximately 40 children of employees.

Ms. Stephanie Fanjul is the owner of Work Place Options, a child care consulting firm. Ms. Fanjul testified that her company did a feasibility study for Wake Medical Center's child care facility and also conducted a study at Wake Medical Center which described the results of the child care facility on productivity and employee morale. Using exhibits, Ms. Fanjul testified that Wake Medical Center's on-site child care had lowered staff turnover for child care participants, reduced their unscheduled absences and shortened maternity leaves. Ms. Fanjul also testified that other

national studies involving hospitals also showed that on-site child care significantly improved employee recruitment, retention and morale.

Ms. Harrelson is an employee of taxpayer who has a three year old child in taxpayer's child care center. Ms. Harrelson testified to the advantages of having weekend care for her child because both she and her husband often worked on weekends. Ms. Harrelson also testified that although her scheduled hours are from 8:00 a.m. to 4:30 p.m., she knows that if she has to work past dinner time, her child will be fed and cared for at the child care center. Ms. Harrelson also testified that if taxpayer's child care center were closed, she would seek employment at one of the competing area hospitals that had on-site day care.

Appellees presented no evidence.

The Property Tax Commission (hereinafter Commission) concluded that taxpayer's child care center was not exempt from taxation and denied taxpayer's exemptions for both 1990 and 1991. In its order denying the exemptions, the Commission made the following findings of fact and conclusions of law:

## Findings of Fact

. . . .

7. The Moses H. Cone Memorial Hospital employs more than 3,000 employees who are eligible to place their children in the Moses H. Cone Memorial Hospital Child Care Facility.

8. The Moses H. Cone Memorial Hospital Child Care Facility is available to all employees of Moses H. Cone Memorial Hospital, strictly on a first come, first served basis. No preference at all is given to nurses or to employees with duties directly related to the provision of medical care. The Facility is equally available to cafeteria, janitorial, maintenance, and administrative personnel as to those whose duties are related directly to the provision of medical care services.

9. The Child Care Facility has a capacity of approximately 160 children (testimony of Ms. Shaub). Because some parents have more than one child in the Facility, approximately 145 to 150 employees of Moses H. Cone Memorial Hospital are served by the facility at any given time. The Facility serves

less than five percent (5%) of Hospital employees; the vast majority of Hospital's over 3,000 employees does not have a child in the Facility and derive no benefit from its operations. Approximately 20% of the 150 or so employees who do use the Facility are part-time employees (testimony of Ms. Shaub).

10. The rates charged by the Facility are comparable to those of "average" daycare centers in the Greensboro area. The services and amenities provided by the Facility, however, are clearly above average. The Facility is therefore a benefit to employees who are allowed to place a child there. Because of the first come, first served policy, however, this benefit tends to accrue to employees on the basis of seniority, without regard to their duties. Administrators, maintenance workers and cafeteria workers have the same right to place children in the Facility as do nurses on rotating shifts.

11. The Facility competes directly with commercial, for-profit providers of child care services in the Greensboro area. Because the Facility is subsidized by the Hospital, it has two great attractions for Hospital employees: (1) it is located adjacent to their place of work; and (2) it offers better facilities and services, at a lower price, than competing commercial daycare centers.

12. Commercial for-profit child care centers located in Guilford County are subject to ad valorem taxation.

13. While the provision of child care services may aid the Hospital in retaining those employees (a small minority of the total) who are able to place a child in the Facility, the Facility, despite the Hospital's assertions to the contrary, is of little or no benefit to the Hospital in recruitment because the Facility has a substantial waiting list (testimony of Ms. Fouts), and no empty spaces. The Hospital therefore cannot use the Facility as a recruitment tool. This problem is addressed Hospital Exhibit 4 (at unnumbered page 8) which deals with the experience of Wake Medical Center in this regard.

14. The property under appeal is used by the Hospital to provide an employee benefit to a small minority of the Hospital's employees. Under the Hospital's operating policies, no preference is given to employees whose duties are directly related to the provision of medical care. Instead, the waiting

list method favors long-term employees, regardless of the nature of their duties, over new hires.

15. Commercial child care for parents who work the day shift is readily available in the Greensboro area; see Hospital Exhibit 1.

Conclusions of Law

. . . .

7. The Hospital failed to establish, by the greater weight of the evidence or by any stipulated facts, that the subject property was owned by a qualifying agency as described in G.S. 105-278.7 on either 1 January 1990 or 1 January 1991. In particular, the Commission concludes as a matter of law that the facts contained in Stipulation paragraphs A and B do not support the conclusion that the Hospital was a qualifying owner under the provisions of G.S. 105-278.7(c). The Hospital did not establish that it was a charitable association or institution pursuant to G.S. 105-278.7(c)(1), or that it was one of the organizations described in G.S. 105-278(c)(2) through (c)(7).

8. The Hospital failed to establish, by the greater weight of the evidence or by any stipulated facts, that the subject property was owned by a qualifying hospital as described in G.S. 105-278.8 on either 1 January 1990 or 1 January 1991. In particular, the Commission concludes as a matter of law that the facts contained in Stipulation paragraphs A and B do not support the conclusion that the Hospital was charitable institution under the provisions of G.S. 105-278.8(a). In reaching this conclusion of law, the Commission applied the holding of the Court of Appeals in In re Chapel Hill Residential Retirement Center, 60 N.C. App. 294, 299 S.E.2d 782 (1983). In that case, the Court of Appeals considered in some detail the question of what constituted "charity" for the purposes of ad valorem tax exemption.

9. In paragraph H of the Stipulations, the parties stipulated that the subject property (consisting of land and improvements valued at $950,940) was actually and exclusively used for child care. The Commission concludes as matter of law that the subject property, actually and exclusively used to provide child care for Hospital employees, is not used for an "educational

## IN RE MOSES H. CONE MEMORIAL HOSPITAL

[113 N.C. App. 562 (1994)]

purpose" as defined in G.S. 105-278.7(f)(1), nor is it used for a charitable purpose as defined in G.S. 105-278.7(f)(4).

10. No part of the Moses H. Cone Memorial Hospital Child Care Facility is used for a charitable hospital purpose as required by G.S. 105-278.8.

11. The subject property, actually and exclusively used to provide child care services to a small percentage of the Hospital's workers at below market rates, competes directly with commercial providers of child care services.

Taxpayer appeals.

*Wilson & Iseman, by G. Gray Wilson and Urs R. Gsteiger, for taxpayer-appellant.*

*Guilford County Attorney's Office, by Deputy County Attorney Gregory L. Gorham and Deputy County Attorney J. Edwin Pons, for County-appellee.*

*Nichols, Caffrey, Hill, Evans & Murrelle, by Fred T. Hamlet and ToNola D. Brown, for taxpayer-appellee.*

EAGLES, Judge.

Taxpayer appeals from the 24 November 1992 order of the Property Tax Commission (Commission) denying exemption to taxpayer's child care center for years 1990 and 1991. In that order, the Commission reversed the decision of the Guilford County Board of Equalization and Review (Board) granting taxpayer an exemption for its child care center in 1990 and affirmed the decision of the Board denying the exemption in 1991. After careful review, we conclude that the Commission had no authority to reverse the Board's 1990 decision because that appeal was not properly before the Commission. We also conclude that the Commission erred in denying the exemption for 1991. Accordingly, we vacate the Commission's order reversing the 1990 decision of the Board and reinstate the Board's 1990 order granting taxpayer an exemption for its child care center for the year 1990. We also reverse the Commission's order affirming the Board's 1991 decision denying the exemption to the child care center.

I.

We first set out the scope of appellate review for cases coming from the Property Tax Commission. G.S. 105-345.2 provides that:

IN RE MOSES H. CONE MEMORIAL HOSPITAL

[113 N.C. App. 562 (1994)]

(b) So far as necessary to the decision and where presented, the court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning and applicability of the terms of any Commission action. The court may affirm or reverse the decision of the Commission, declare the same null and void, or remand the case for further proceedings; or it may reverse or modify the decision if the substantial rights of the appellants have been prejudiced because the Commission's findings, inferences, conclusions or decisions are:

. . . .

(2) In excess of statutory authority or jurisdiction of the Commission; or

. . . .

(5) Unsupported by competent, material and substantial evidence in view of the entire record as submitted; or

(6) Arbitrary or capricious.

(c) In making the foregoing determinations, the court shall review the whole record or such portions thereof as may be cited by any party and due account shall be taken of the rule of prejudicial error.

This standard of review is known as the "whole record" test. The whole record test is not "a tool of judicial intrusion." *Rainbow Springs Partnership v. County of Macon*, 79 N.C. App. 335, 341, 339 S.E.2d 681, 685 (1986) (*quoting In re Rogers*, 297 N.C. 48, 65, 253 S.E.2d 912, 922 (1979)). It does not allow a reviewing court to substitute its own judgment in place of the Commission's judgment even when there are two reasonably conflicting views. *Id.* at 341, 339 S.E.2d at 684. Rather, the whole record test merely allows a reviewing court to determine whether the Commission's decision has a rational basis in the evidence. *Id.* at 341, 339 S.E.2d at 685. Under the whole record test, the reviewing court must determine whether the Commission's decision is supported by substantial evidence. *Id.* " 'Substantial evidence is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion.' " *Rainbow Springs Partnership v. County of Macon*, 79 N.C. App. 335, 341, 339 S.E.2d 681, 685 (1986) (quoting *Thompson v. Wake County Board of Education*, 292 N.C. 406, 414,

IN RE MOSES H. CONE MEMORIAL HOSPITAL

[113 N.C. App. 562 (1994)]

233 S.E.2d 538, 544 (1977)). In determining whether the evidence is substantial, the reviewing court must

> take into account whatever in the record fairly detracts from the weight of the [Commission's] evidence. . . . [T]he court may not consider the evidence which in and of itself justifies the [Commission's] decision without [also] taking into account the contradictory evidence or other evidence from which conflicting inferences could be drawn.

*Rainbow Springs Partnership v. County of Macon*, 79 N.C. App. 335, 341, 339 S.E.2d 681, 685 (1986) (quoting *Thompson v. Wake County Board of Education*, 292 N.C. 406, 410, 233 S.E.2d 538, 541 (1977)). If the court finds substantial evidence to support the Commission's decision, the Commission's decision may not be overturned. *Id.* at 343, 339 S.E.2d at 686.

## II.

[1] We begin with the 1990 appeal brought by respondent Roger C. Cotten. Respondent is also the Guilford County Tax Assessor. When the Board granted taxpayer an exemption for its child care center in 1990, respondent appealed to the Commission. The Commission reversed the decision of the Board and denied taxpayer an exemption for 1990. Taxpayer contends that respondent had no standing to appeal the decision of the Board and that the Commission had no jurisdiction to hear respondent's purported appeal. We agree.

The right of appeal to the Commission from a local county board of equalization and review is governed solely by G.S. 105-290(b). *In re Appeal of Forsyth County*, 104 N.C. App. 635, 410 S.E.2d 533 (1991). G.S. 105-290(b) provides that "Any property owner of the county may except to an order of the county board of equalization and review or the board of county commissioners concerning the listing, appraisal, or assessment of property and appeal the order to the Property Tax Commission." In *In re Appeal of Forsyth County*, 104 N.C. App. 635, 410 S.E.2d 533 (1991), this court held that G.S. 105-290(b) "conspicuously omits a right of appeal to the Commission by a county or any county official on behalf of a county." *Id.* at 637, 410 S.E.2d at 534.

Although respondent here is also the Guilford County Tax Assessor, respondent argues that he did not file his appeal on behalf of the county or in his official capacity as Guilford County

Tax Assessor. Instead, respondent argues that he filed his appeal individually and in his own behalf as a property owner of Guilford County. Accordingly, respondent contends that as a property owner in Guilford County, he is entitled to appeal under G.S. 105-290(b). We disagree.

In *Forsyth County*, this court stated that when the legislature repealed former G.S. 105-324(b), which had previously allowed "a member of the board of county commissioners or board of equalization and review" to appeal to the Commission, the legislature clearly intended to restrict the class of persons who could appeal to the Commission. *In re Appeal of Forsyth County*, 104 N.C. App. 635, 637, 410 S.E.2d 533, 534 (1991). We then held that a county or a county official acting on behalf of a county could not appeal to the Commission under G.S. 105-290(b). *Id.*

Here, respondent is attempting to appeal in his individual capacity a decision of the Board that he could not appeal in his official capacity as Tax Assessor. We do not think that the legislature, in restricting the county's right to appeal under G.S. 105-290(b), intended for county officials to circumvent G.S. 105-290(b) by filing appeals in their individual capacities. Allowing respondent here to appeal in his individual capacity a decision of the Board he could not otherwise appeal would eviscerate the legislature's intent and this court's holding in *Forsyth County*. Accordingly, we hold that respondent had no standing to appeal to the Commission and that the Commission had no jurisdiction to hear respondent's appeal. G.S. 105-345.2(b)(2); *cf. In re Appeal of Forsyth County*, 104 N.C. App. 635, 410 S.E.2d 533 (1991). Since the Commission had no jurisdiction to hear respondent's appeal, we vacate the Commission's order reversing the Board's 1990 decision and reinstate the Board's 1990 decision granting taxpayer an exemption for 1990.

III.

We now address the merits of the 1991 appeal. Taxpayer contends that the Commission erred by denying taxpayer an exemption for its child care center in 1991.

A.

[2] Taxpayer first contends that the Commission erred in concluding that taxpayer was not a charitable hospital pursuant to G.S. 105-278.8. The Commission in its conclusions of law concluded that "The Hospital [taxpayer] failed to establish, by the greater

weight of the evidence or by any stipulated facts, that the subject property was owned by a qualifying hospital as described in G.S. 105-278.8." G.S. 105-278.8 provides that:

> (a) Real and personal property held for or owned by a hospital organized and operated as a nonstock, nonprofit, charitable institution (without profit to members or their successors) shall be exempted from taxation if actually and exclusively used for charitable hospital purposes.
>
> . . . .
>
> (c) Within the meaning of this section, a charitable hospital purpose is a hospital purpose that has humane and philanthropic objectives; it is a hospital activity that benefits humanity or a significant rather than limited segment of the community without expectation of pecuniary profit or reward. However, the fact that a qualifying hospital charges patients who are able to pay for services rendered does not defeat the exemption granted by this section.

At the hearing before the Commission, the parties stipulated to the following facts:

> A. The Moses H. Cone Memorial Hospital [taxpayer] is organized as a North Carolina nonstock, nonprofit hospital and is licensed as a general acute care hospital by the North Carolina Department of Human Resources.
>
> B. The Moses H. Cone Memorial Hospital [taxpayer] operates the Moses H. Cone Memorial Hospital and Women's Hospital of Greensboro and they are open to all citizens of Guilford and adjacent counties without regard to race, religion, creed, or national origin. They do not deny emergency treatment to patients on the basis of their immediate need [sic] to pay for their care.

We conclude that these stipulations of fact satisfy the requirements of G.S. 105-278.8 and that the Commission made an error of law in concluding that taxpayer failed to show by any stipulated facts that taxpayer is a charitable hospital pursuant to G.S. 105-278.8.

### B.

[3] Taxpayer further contends that the Commission erred in finding that taxpayer's child care center "competes directly with com-

mercial, for-profit providers of child care services in the Greensboro area" and that taxpayer's child care facility "is of little or no benefit to the hospital in recruitment." Under the whole record test, the Commission's findings of fact must stand if they are supported by competent, material and substantial evidence in view of the entire record. G.S. 105-345.2(b)(5). Taxpayer contends that these findings are unsupported by the record. We agree.

We can find no evidence in the record that taxpayer's child care center competes directly with other area commercial day care centers. We conclude that there is no direct commercial competition between taxpayer's child care center and other area commercial day care centers for two reasons.

First, in order for there to be direct commercial competition, taxpayer's child care center must compete directly with other commercial day care centers for patrons from the general public. All of the evidence before the Commission, however, showed that taxpayer's child care center was open only to hospital employees. Ms. Cynthia Schaub, taxpayer's Vice President of Human Resources, stated twice on cross examination that taxpayer's child care center was open only to hospital employees. The Commission presented no contrary evidence and we find no evidence in the record that taxpayer's child care center was open to anyone other than hospital employees.

Second, taxpayer's child care center meets a need of its employees that could not be fulfilled by the other commercial day care centers. Taxpayer's child care center is open seven days a week, and on holidays from 6:00 a.m. to 12:00 midnight to accommodate the needs of its employees. Ms. Schaub testified that taxpayer's child care center was needed because there were no commercial day care centers open after 7:00 p.m. and that commercial day care centers could not accommodate hospital employees who worked rotating shifts. Ms. Sharon Fouts, the director of taxpayer's child care center, testified that taxpayer's child care center accommodated the needs of hospital employees who worked rotating shifts and that she did not know of any other child care facility in Greensboro open until 12:00 midnight. Ms. Beverly Harrelson, an employee of taxpayer who has a three year old son in taxpayer's child care center, testified that at her previous day care, she would have had to make arrangements with her sister or her mother to pick up her son if she had to stay past 6:00 p.m. for an emergency

at the hospital. Ms. Harrelson also testified that the child care center's weekend hours allowed her to work weekends at the hospital. Appellees again presented no evidence to dispute this testimony. For these reasons, we conclude that the Commission's finding that taxpayer's child care center competes with other area commercial day care centers is unsupported by substantial evidence in view of the entire record.

Likewise, we also conclude that the Commission's finding that taxpayer's child care center "is of little or no benefit to the hospital in recruitment" is also unsupported by substantial evidence in the record. Ms. Schaub, as Vice President of Human Resources, is responsible for the recruitment of hospital employees. Ms. Schaub testified that taxpayer's child care center enabled the hospital to be more competitive in recruiting employees with other area hospitals who also offered on-site child care for their employees. Ms. Stephanie Fanjul, the owner of a child care consulting firm, testified that other national studies showed that on-site child care significantly improved employee recruitment, retention and morale. Since appellees presented no contrary evidence, we conclude that taxpayer's child care center aided the hospital in the recruitment and retention of hospital employees.

C.

[4] Finally, taxpayer contends that the Commission erred in concluding that "No part of the Moses H. Cone Memorial Hospital Child Care Facility is used for a charitable hospital purpose as required by G.S. 105-278.8." We agree that the Commission erred.

Under G.S. 105-278.8, real property owned by a charitable hospital is exempt from taxation only if it is "actually and exclusively used for charitable hospital purposes." G.S. 105-278.8. Generally, statutes exempting specific property from taxation are construed strictly against exemption and in favor of taxation when there is room for construction. *Wake County v. Ingle*, 273 N.C. 343, 346, 160 S.E.2d 62, 64 (1968). The Commission argues that taxpayer's child care center does not fall within a strict construction of a charitable hospital purpose pursuant to G.S. 105-278.8. However, notwithstanding the Commission's reliance on its strict construction of the statute, we have evaluated the statute in the context of the whole record and conclude that the child care center serves a charitable hospital purpose as contemplated by G.S. 105-278.8.

IN RE MOSES H. CONE MEMORIAL HOSPITAL

[113 N.C. App. 562 (1994)]

The Commission relies on the North Carolina Supreme Court's holding in *Rockingham County v. Elon College*, 219 N.C. 342, 13 S.E.2d 618 (1941), as authority for its position that taxpayer's child care center is not "actually and exclusively used" for charitable hospital purposes. We find *Rockingham* readily distinguishable.

In *Rockingham*, the taxpayer, Elon College, was an exempt educational institution. There the taxpayer was assessed ad valorem taxes for an office building which it owned and leased to members of the public who operated private businesses. The taxpayer used the rental income generated from the property exclusively for educational purposes. The North Carolina Supreme Court concluded that the taxpayer's building was not entitled to exemption because it was used for commercial purposes. In concluding that taxpayer's building was used for commercial purposes, the *Rockingham* Court made the following observations:

> The defendant [taxpayer] purchased the property in question as an investment, from which it hopes to derive an income. It is held for profit or gain, *i.e.*, for the purpose of making money. It is in a business district and devoted to rental purposes. If it did not yield an income the defendant [taxpayer] would have no use for it.

*Id.* at 347, 13 S.E.2d at 622. The test under *Rockingham* then is whether the subject property is used for commercial purposes or held for profit or gain.

Here, taxpayer's child care center is not operated for the purpose of making money. Rather, taxpayer's child care center is used to aid in the recruitment and retention of hospital employees. Ms. Schaub testified that taxpayer made no profit from its child care center and that taxpayer subsidized approximately $160,000 of the child care center's annual operating expenses. Ms. Schaub testified that despite this loss, the child care center enabled the hospital to be more competitive in recruiting employees with other area hospitals who also offered on-site child care. Also, unlike the taxpayer's office building in *Rockingham*, taxpayer's child care center is not located in a business district but on the hospital campus.

The Commission argues that *Rockingham* is analogous to our situation here because of its finding that taxpayer's child care center "competes directly with commercial, for-profit providers of child care services in the Greensboro area." As we have already

IN RE MOSES H. CONE MEMORIAL HOSPITAL

[113 N.C. App. 562 (1994)]

discussed, this finding, to the extent that it entails direct commercial competition, is unsupported by substantial evidence in the record. We reiterate that taxpayer's child care center is not engaged in commercial competition with other area child care centers nor is it held by the taxpayer for the purpose of making money. Accordingly, *Rockingham* does not control here.

The question of whether any of the purposes for which taxpayer's child care center is held is a charitable hospital purpose within the meaning of G.S. 105-278.8 is one of first impression in this State. Taxpayer urges us to adopt the reasonably necessary standard applied by the Illinois Appellate Court in *Memorial Child Care v. Department of Revenue*, 604 N.E.2d 530 (Ill. App. Ct. 1992), and the Nebraska Supreme Court in *Immanuel, Inc. v. Board of Equalization of Douglas County*, 384 N.W.2d 266 (Neb. 1986). We find *Memorial Child Care* to be particularly analogous to the facts at issue here.

In *Memorial Child Care v. Department of Revenue*, 604 N.E.2d 530 (Ill. App. Ct. 1992), the Illinois Appellate Court held that appellee's child care center was exempt from taxation because the child care center was reasonably necessary to accomplish the efficient administration of the hospital. Property may qualify for a charitable exemption in Illinois if the property is used exclusively for charitable purposes. Under Illinois case law, property falls within this exemption if the use of the property is reasonably necessary to accomplish the charitable purpose of the institution. *Id*. In determining whether appellee's child care center was reasonably necessary to accomplish the efficient administration of the hospital, the Illinois Appellate Court noted the following facts:

In the instant case, Child Care [appellee] operated a child-care center for the employees at Memorial Medical Center. The record indicates that Springfield had a shortage of child-care facilities, and that the employees of Memorial Medical Center had difficulty finding child-care available which met their needs and fit the hospital scheduling requirements. Child Care's facility was specifically organized to provide a flexible child-care program for the employees of Memorial Medical Center. The hours of operation of the facility are from 5:30 a.m. to midnight, seven days a week, including holidays. Child Care offers variable services for employees, such as a daily rate for part-time employees because department schedules often include work

> on weekends. Child Care's hours of operation were specifically
> structured for Memorial Medical Center employees and are
> more flexible and of longer duration than those of commercial
> day-care centers. Child Care was created specifically as a not-
> for-profit corporation to alleviate the difficulty Memorial Medical
> Center experienced in hiring and maintaining employment of
> professional employees with young children.

*Id.* at 535. The court went on to hold that appellee's child care
center was used for a purpose "reasonably necessary to accomplish
the efficient administration of Memorial Medical Center as a tax-
exempt charitable hospital." *Id.* The court also stated that the
fact that the Medical Center functioned for years without a child
care center did not alone mean that a child care center for hospital
employees was not essential to the hospital's operation. According-
ly, the court held that appellee was entitled to exemption from
property taxes.

The Commission, however, urges us to adopt the reasoning
of the Minnesota Supreme Court in *Chisago Health Services v.
Commissioner of Revenue*, 462 N.W.2d 386 (Minn. 1990). In *Chisago*,
the Minnesota Supreme Court took a more restrictive view of the
reasonably necessary test. There, the Minnesota Supreme Court
affirmed the decision of the Minnesota Tax Court holding that
two hospital auxiliary outpatient medical facilities were not
reasonably necessary for the hospital to accomplish its charitable
purpose. The Court stated that the reasonably necessary test
measures the degree to which the auxiliary facilities and the public
hospital are functionally interdependent. In affirming the decision
of the Tax Court, the Court rejected the appellant's argument
that the outpatient facilities were reasonably necessary to operate
the hospital in a "financially sound manner."

We find the reasoning of *Memorial Child Care v. Department
of Revenue*, 604 N.E.2d 530 (Ill. App. Ct. 1992), persuasive. Accord-
ingly, we adopt the "reasonably necessary" test as laid out in
*Memorial Child Care*. We now apply the reasoning of *Memorial
Child Care* to the facts at issue here.

Like the child care center in *Memorial Child Care*, taxpayer's
child care center here is organized to meet the specific needs of
hospital employees. Taxpayer's child care center is open seven
days a week, including holidays, from 6:00 a.m. to 12:00 midnight.
It accommodates the needs of employees who work rotating shifts

or late night hours. Its hours of operation are longer and more flexible than other area commercial day care centers. Finally, taxpayer's child care center aids taxpayer in the recruitment and retention of hospital employees. Accordingly, we conclude that on these facts, taxpayer's child care center is reasonably necessary to accomplish taxpayer's charitable purpose. For the reasons stated, we hold that taxpayer's child care center is "actually and exclusively used" for a charitable hospital purpose as required by G.S. 105-278.8 and accordingly, that taxpayer is entitled to an exemption from ad valorem taxes for its child care center.

IV.

In sum, we vacate the Commission's order regarding the 1990 appeal and reinstate the Board's 1990 order granting taxpayer an exemption from ad valorem taxes for its child care center for the year 1990. We also reverse the Commission's order regarding the 1991 appeal and hold that taxpayer is entitled to an exemption from ad valorem taxes for its child care center under G.S. 105-278.8.

Vacated in part, reversed in part.

Chief Judge ARNOLD and Judge WELLS concur.