MOUNT CALVARY BAPTIST CHURCH, INC., Plaintiff-Appellant, v. KENNETH E. ZEHNDER, Director, The Department of Revenue *et al.*, Defendants-Appellees.

First District (5th Division)   No. 1—97—3831

Opinion filed December 31, 1998.

James J. Romberg of James J. Romberg, Chartered, of Chicago, for appellant.

James E. Ryan, Attorney General, of Chicago (Barbara A. Preiner, Solicitor General, and Janon E. Fabiano, Assistant Attorney General, of counsel), for appellees Kenneth Zehnder and Illinois Department of Revenue.

JUSTICE THEIS delivered the opinion of the court:

Mount Calvary Baptist Church, Inc. (Mount Calvary), an Illinois not-for-profit corporation, seeks reversal of the circuit court's order of September 16, 1997, affirming the final administrative decision of the Illinois Department of Revenue (the Department), which had denied, in part, Mount Calvary's request for a religious-use tax exemption for several parcels of property for the 1991 tax year. The properties at issue comprise a burned-out church building, a storage building, and several parking lots. We reverse and remand with directions.

On July 2, 1992, Mount Calvary filed a real estate tax exemption complaint with the Board of (Tax) Appeals of Cook County (the Board), seeking a religious-use property tax exemption under section 19.2 of the Revenue Act of 1939 (Ill. Rev. Stat. 1991, ch. 120, par. 500.2) for various parcels of real estate in Chicago for the 1991 tax year. The Board recommended that the exemption be granted. The Department denied the application, and Mount Calvary requested a formal hearing before the administrative law judge (the ALJ) to determine whether the parcels warranted exemption. At the hearing, the ALJ noted that Mount Calvary's application did not include all parcels owned by it and admitted into evidence an exhibit identifying all the parcels on which were located a burned church building, Mount Calvary Christian Academy, a storage building, and various parking lots.

The burned church building (the burned church) is an 8,692-square-foot building located on three lots at 1251, 1253, and 1257 West 111th Street, identified by permanent index numbers (PINs) 25—20—105—001 through and including 25—20—105—003. Mount Calvary Christian Academy (the academy), a Christian school at 1237, 1239, 1241, 1243, 1245, 1249 West 111th Street, is located directly east of the burned church, also on West 111th Street, and is identified by PINs 25—20—105—004 through and including 25—20—105—009. A 7,260-square-foot storage building is located at 1322 West 111th Street on PIN 25—17—333—036.

Parking lots were located on the following parcel numbers: PINs 25—20—105—010 through and including 25—20—105—012, and 25—20—105—045 located directly east of the academy on 111th Street; PINs 25—20—105—019 through and including 25—20—105—023 located at least five parcels east of but still on the same block as the academy; PIN 25—20—105—047 located at 1256 West 111th Street; PINs 25—17—333—024 through 25—17—333—025 located at least 10

parcels west of but on the same block as the storage building; and PIN 17—333—024—037, a parking lot located directly east of the storage building on 111th Street.

The church building was damaged by a fire in September 1989. The fire resulted in the relocation of worship services and other church activities to the academy building. Prior to the fire, the academy building was used as a school known as the Mount Calvary Christian Academy. Immediately after the fire, Mount Calvary filed a claim with its insurance carrier, and the claim was denied for lack of coverage. On September 18, 1989, Mount Calvary filed for protection under the United States Bankruptcy Code.

In November of 1989, Mount Calvary sought a declaratory judgment on the issue of insurance coverage in the United States District Court for the Northern District of Illinois. Mount Calvary ultimately prevailed on appeal to the United States Court of Appeals for the Seventh Circuit, which found Mount Calvary was entitled to insurance coverage. After the United States Supreme Court denied the insurer's writ of *certiorari*, the matter was returned to the bankruptcy court for determination of the amount owed. A settlement was reached in March of 1998 in the amount of $2 million.

The following persons testified at the hearing before the ALJ on behalf of Mount Calvary: Theodore Peters (Peters), a deacon and trustee of Mount Calvary; Dr. Robert Johnson (Johnson), chairman of Mount Calvary's board of trustees; and Greg Kenner (Kenner), manager at John E. Wilson, Ltd., Certified Public Accountants. In addition, the Department and Mount Calvary submitted exhibits, which included deeds for the property establishing Mount Calvary's ownership and two maps showing the location of the property.

The record on appeal indicates that Peters testified that he had been a member of Mount Calvary Baptist Church since 1946. Peters explained that, in September 1989, the church building burned and after the fire the church building was closed because no roof remained. In 1991, the burned structure remained standing, but was not rebuilt.

Peters stated that Mount Calvary did not actually use the burned church building for religious services, but explained "[s]ometimes we would go there and pray." Peters explained that, after the fire, Mount Calvary conducted its religious services at the academy building just east of the burned church building. Peters further testified that insurance coverage litigation ongoing in 1991 prevented the church from being rebuilt as it formerly stood. Peters attested that no business was conducted for profit that year in the burned church building or in any of the parking lots. Peters also testified that in 1991 Mount Calvary's parking lots were used by parishioners attending church. When asked

whether during 1991, given its various activities, the church used all of its parking facilities, Peters answered: "Not all of the time, but most of the time."

Johnson testified that in 1991, in his capacity as chairman of the board of trustees and registered agent of Mount Calvary, he became aware of the church's need to maintain its not-for-profit corporate status and to make applications for religious-use exemptions with respect to the subject property. Johnson stated that Mount Calvary had established a building fund, which was a special savings account designated for the following purpose: "We had to try to rebuild our church after it had burned in '89."

With respect to the storage building, Johnson testified that in 1991 "[a]ccess was restricted because the building needed repair so we didn't let anyone go into it." Johnson further explained: "We just used it for storage" because of Mount Calvary's insurance, fines and violations on the building. Johnson stated that in 1991 people did go into the building, "but not for any church activities, just to get things in and out of it." Johnson testified that Mount Calvary stored desks, chairs, and air conditioners in the storage building.

Johnson stated that the burned church building was not actually being used during 1991 by Mount Calvary because of its condition. When asked about the activities conducted in the academy building in lieu of the church building in 1991, Johnson stressed that "there is activity at the church seven days a week." Johnson explained that, when the former pastor left Mount Calvary in 1991 and took approximately half of the congregation with him, Mount Calvary found it difficult to comply with the bankruptcy plan approved by the court in 1990. Johnson explained that in 1991 Mount Calvary began to restructure its affairs. Johnson testified that, but for the fire in 1989, Mount Calvary would have been operating in the actual church building in 1991 and that the use of the academy building for religious services resulted solely from the fire. Kenner established Mount Calvary's financial position.

The ALJ found that the burned church and the storage building were not in exempt use in 1991. The ALJ also found that, because it could not use the church, Mount Calvary daily conducted numerous activities during the 1991 tax year at the academy building and relocated its services there. The ALJ also found that Mount Calvary had approximately 1,000 members at the beginning of the 1991 tax year but that membership decreased to approximately 500 persons later in the year due to internal conflict. The ALJ further found that Mount Calvary had established a building fund in order to raise money for rebuilding the church, which at the time the ALJ entered his findings of fact amounted to $8,161.

The ALJ recommended that Mount Calvary's request for exemption be granted for the 1991 tax year for those parcels of property on which the academy building and its adjacent parking lots were located. The ALJ identified those parcels by the following parcel numbers: 25—20—105—004 through and including 25—20—105—009; 25—20—105—010 through and including 25—20—105—012 and 25—20—105—045; and 25—20—105—019 through and including 25—20—105—023. However, the ALJ recommended that Mount Calvary's request for exemption be denied for the other parcels of property on which the burned church, the storage building, and the remaining parking areas were located.

In reaching these recommendations, the ALJ concluded that this case was "factually similar" to the case of *Antioch Missionary Baptist Church v. Rosewell*, 119 Ill. App. 3d 981, 457 N.E.2d 500 (1983). In *Antioch*, this court held that the church failed to meet its burden of showing that boarded-up, vacant property it acquired was actually used for an exempt purpose during the years in question, though it was ultimately developed for an exempt purpose. Here, as in *Antioch*, the ALJ concluded that "the applicant did not actually use its church building throughout the entire 1991 tax year." The ALJ further concluded that the church's "burned out" condition prohibited the applicant from using it for religious purposes for the time period in question. The ALJ reasoned that "although applicant clearly intended to use the church for religious purposes, such intent, standing alone, does not establish that the church was in fact in exempt use under current Illinois law." Based upon his reading of section 19.16 of the Revenue Act of 1939 (Ill. Rev. Stat. 1991, ch. 120, par. 500.16 (currently 35 ILCS 200/15—125 (West 1996))), which exempts parking areas, not leased or used for profit, when used as part of a use for which an exemption is provided, the ALJ then concluded that because the church building was not in exempt use during 1991, the parking lot adjacent to it was similarly nonexempt.

Having found that the academy building was primarily and actually used for religious services during the 1991 tax year, the ALJ concluded that the academy building and its adjacent parking lots were used for a religious purpose within the meaning of section 19.2 (Ill. Rev. Stat. 1991, ch. 120, par. 500.2) and were exempt from taxation for that year.

As to the storage building, the ALJ found that the record established it was "in a dilapidated condition that rendered it unsuitable for regular use during the 1991 tax year" and concluded that, because its condition mirrored that found in *Antioch*, it was not in exempt use during 1991. The ALJ further noted that the evidence

pertaining to the storage building's use was inconsistent and supported the conclusion of taxation.

The ALJ explained that Mount Calvary had failed to show how the storage facility furthered its exempt purpose and concluded that the storage building was not reasonably necessary to further Mount Calvary's exempt operations during the tax year 1991. Finally, because the ALJ concluded that the storage building was not entitled to exemption, he concluded that "the plain meaning of paragraph 500.16 mandates that the adjacent parking lots are likewise non-exempt."

■ The facts upon which the Department's decision and the circuit court's order rest are not in dispute. "When the facts upon which a decision of tax exempt status rests are undisputed, whether property is exempt is a question of law." *Cook County Masonic Temple Ass'n v. Department of Revenue*, 104 Ill. App. 3d 658,. 660, 432 N.E.2d 1240, 1242 (1982). In such cases, the decision as to whether the property is entitled to exemption "depends solely upon an application of the appropriate legal standard to the undisputed facts." *Illinois Central Gulf R.R. Co. v. Department of Local Government Affairs*, 95 Ill. 2d 111, 129, 447 N.E.2d 315, 323 (1983).

■ The General Assembly may exempt from taxation only the property of the state, units of local government and school districts and property used exclusively for agricultural and horticultural societies, and for school, religious, cemetery and charitable purposes. Ill. Const. 1970, art. IX, § 6. Through section 19.2 of the Revenue Act of 1939 (Ill. Rev. Stat. 1991, ch. 120. par. 500.2 (currently 35 ILCS 200/15—40 (West 1996))), the legislature has exempted from taxation "[a]ll property used exclusively for religious purposes, or used exclusively for school and religious purposes, or for orphanages and not leased or otherwise used with a view to profit." In addition, through section 19.16 of the Revenue Act of 1939 (Ill. Rev. Stat. 1991, ch. 120, par. 500.16 (currently 35 ILCS 200/15—125 (West 1996))), the legislature further exempted from taxation "[p]arking areas, not leased or used for profit, when used as a part of a use for which an exemption is provided hereinbefore and owned by any school district, non-profit hospital or school, or religious or charitable institution which meets the qualifications for exemption."

■ Statutes granting tax exemptions must be strictly construed in favor of taxation, and the party claiming exemption must prove clearly that its property falls within both the constitutional authorization and the terms of the exempting statute. *Methodist Old Peoples Home v. Korzen*, 39 Ill. 2d 149, 155, 233 N.E.2d 537, 540 (1968) (all facts and debatable questions resolved in favor of taxation); *People ex rel. McCullough v. Deutsche Evangelisch Lutherische Jehovah Gemeinde Un-*

*geaenderter Augsburgischer Confession*, 249 Ill. 132, 135-36, 94 N.E. 162, 164 (1911). "While it is the taxpayer's burden to prove its right to an exemption, each case requires consideration of the particular facts presented." *Memorial Child Care v. Department of Revenue*, 238 Ill. App. 3d 985, 992, 604 N.E.2d 530, 535 (1992).

We turn first to the circuit court's decision insofar as it affirms the recommendation of the ALJ to deny exemption for the burned church. Under the exempting statute, Mount Calvary had the burden of proving as to the burned church both that it owned the properties and that the properties were used exclusively for religious purposes and not leased or used with a view to profit. The ALJ's findings of fact establish that Mount Calvary sustained its burden as to ownership and absence of lease or use with a view to profit. Thus, Mount Calvary's purported failure to sustain its burden of proof as to actual use exclusively for a religious purpose is at issue here.

■ The term "religious purpose" has been most narrowly defined as "a use of such property by a religious society or body of persons as a stated place for public worship, Sunday schools and religious instruction." *People ex rel. McCullough*, 249 Ill. at 136-37, 94 N.E. at 164. However, generally, courts have employed a more liberal construction of the term "religious purpose." *Evangelical Teacher Training Ass'n v. Novak*, 118 Ill. App. 3d 21, 454 N.E.2d 836 (1983) (property used by an organization for teacher training in Bible studies, personal evangelism, and missions was used exclusively for religious purposes). Nevertheless, in order to qualify for exemption, a property must in fact be used for a religious purpose, however that purpose is defined. *Skil Corp. v. Korzen*, 32 Ill. 2d 249, 252, 204 N.E.2d 738, 740 (1965) (observing that "evidence that land was acquired for an exempt purpose does not eliminate the need for proof of actual use for that purpose" and that "[i]ntention to use is not the equivalent of use"); *Antioch Missionary Baptist Church*, 119 Ill. App. 3d at 982, 457 N.E.2d at 501.

■ We conclude that the circuit court erred in affirming the decision of the ALJ with respect to the parcels on which the burned church was located. We do so because we find that the ALJ erred in his application of the law to the facts in finding the facts of this case analogous to those of *Antioch Missionary Baptist Church v. Rosewell*, 119 Ill. App. 3d 981, 457 N.E.2d 500 (1983). In *Antioch*, a congregation purchased on May 11, 1976, a parcel of real estate, abutting its existing church property, which remained boarded up for approximately one year. *Antioch*, 119 Ill. App. 3d at 981-82, 457 N.E.2d at 501. Antioch later applied to the City of Chicago for funds to rehabilitate the property, a process that took about two more years. In 1980, a contrac-

tor began work on the property that continued until the spring of 1981, during which time the property remained vacant. In denying Antioch an exemption from the date the property was acquired through December 1980, this court found that the only evidence presented concerning the use of the property indicated that it was not used for any purpose but in fact was boarded up and vacant during that period. *Antioch*, 119 Ill. App. 3d at 981-82, 457 N.E.2d at 501. Consequently, this court concluded that Antioch had failed to meet its burden of showing that the property was actually used for an exempt purpose during the years at issue. *Antioch*, 119 Ill. App. 3d at 982, 457 N.E.2d at 501.

*Antioch* is distinguishable in this instance. First, and foremost, the property on which Mount Calvary's burned church sat in 1991 was not newly "acquired" property. The property was the site of an existing church, which, but for the 1989 fire, presumably would have continued to be used, as it had been used for years, as a place of worship. In addition, as Peters testified, to the extent that the burned church was used in 1991, it was used exclusively for a religious purpose. Peters explained: "Sometimes, we would go there to pray." Thus, unlike the newly acquired, vacant property at issue in *Antioch*, evidence in the record indicates that the burned church was actually used for a religious purpose in 1991.

Rather than resembling those of *Antioch*, the facts of this case more closely resemble those of *Our Savior Lutheran Church v. Department of Revenue*, 204 Ill. App. 3d 1055, 562 N.E.2d 1198 (1990). In 1985, Our Savior owned a single building consisting of a church, an office, and a parsonage. *Our Savior*, 204 Ill. App. 3d at 1057, 562 N.E.2d at 1198. During the period June 1, 1985, through July 15, 1986, the church and the office portions of the building were used for storage of church property. In addition, the church held occasional bake sales and flea markets in the church portion of the building, and the choir sang there on one occasion. A few items such as records and chairs were stored in the parsonage; however, no one actually resided there during that time period. The Department denied Our Savior's request for a property tax exemption for the year 1986 because it found the property was not in exempt use. Following a hearing, the ALJ, relying upon *Antioch*, found that only the parsonage and its detached carport did not qualify for exemption because they were essentially vacant and unused.

On appeal, a panel of this court affirmed the circuit court's decision reversing the Department and rejected the Department's interpretation of *Antioch*. Limiting its holding to the facts before it, the panel in *Our Savior* held that "where the property consists of a single

building which has been used for an exempt purpose for 40 years, but of which a portion becomes temporarily vacant due to the retirement of the church's pastor but is not used for a nonexempt purpose, we find denial of the tax exemption for that portion to be unreasonable and improper as a matter of law." *Our Savior*, 204 Ill. App. 3d at 1062, 562 N.E.2d at 1202.

We acknowledge that, unlike *Our Savior*, the facts of this case do not involve property consisting of a unified structure; however, we do not find that singular, structural distinction determinative. Instead, we find greater similarity in each structure's established, but interrupted, use for a religious purpose. As in *Our Savior*, the Mount Calvary building had been used exclusively for religious purposes for numerous years and was not being used for nonexempt purposes or for any purpose at all, other than prayer.

Consequently, we conclude that, under facts such as these, where a property already is devoted to a religious purpose as the site of a place of worship, and has been so devoted for numerous years, an incidental interruption of its actual use for that religious purpose due to fire will not destroy the exemption. We conclude that to hold otherwise would be unreasonable and improper. See *Harrisburg-Raleigh Airport Authority v. Department of Revenue*, 126 Ill. 2d 326, 331, 533 N.E.2d 1072, 1074 (1989) (noting that though tax exemption statutes are to be strictly construed in favor of taxation, they are not to be unreasonably construed).

In addition, we note that exemptions have been allowed where property is in the actual process of development and adaptation for exempt use. *People ex rel. Pearsall v. Catholic Bishop*, 311 Ill. 11, 142 N.E. 520 (1924); *Weslin Properties, Inc. v. Department of Revenue*, 157 Ill. App. 3d 580, 510 N.E.2d 564 (1987). The ALJ's findings of fact and conclusions of law do not address Mount Calvary's redevelopment efforts. Nevertheless, the record reveals that Mount Calvary had established a building fund dedicated to the purpose of rebuilding the burned church and was actively pursuing a legal remedy with respect to insurance coverage following the fire. For all of these reasons, we conclude that the circuit court erred in affirming the recommendation of the ALJ as to the exemption status of the burned church building for the 1991 tax year.

■ We next turn to that portion of the circuit court's decision that affirmed the ALJ's recommendation regarding those parking areas found not qualified for exemption in 1991. After examining section 19.16, which governs the exemption of parking lots, together with the evidence presented, we conclude the circuit court erred in affirming that portion of the ALJ's decision that recommended nonexemption

for all of Mount Calvary's parking areas other than the lots adjacent to the parcels on which the academy was located.

The legislature has exempted from taxation "[p]arking areas, not leased or used for profit, when used as a part of a use for which an exemption is provided *** and owned by any *** religious or charitable institution which meets the qualifications for exemption." Ill. Rev. Stat. 1991, ch. 120, par. 500.16 (currently 35 ILCS 200/15—125 (West 1996)). In this instance, the ALJ deemed exempt only those parking lots adjacent to the parcels he deemed exempt, the academy building parcels. Based upon his reading of section 19.16, the ALJ concluded that, because the church building and the storage building were not in exempt use during 1991, the parking lots in closer proximity to them were similarly nonexempt.

The ALJ's reasoning is incorrect. The legislature did not make the exemption of parking areas contingent upon location or proximity to exempt property. The plain language of the Code requires that an applicant seeking an exemption for its parking area demonstrate three things: (1) ownership of the parking area by an exempt institution; (2) the fact that the parking area is not leased or used for profit; and (3) the fact that it is used as part of a use for which an exemption is provided by this Code. See *Norwegian American Hospital, Inc. v. Department of Revenue*, 210 Ill. App. 3d 318, 324, 569 N.E.2d 83, 87 (1991) (noting that case law does not support the notion that adjacency to the primary locus of the charitable organization is a prerequisite for exemption).

Mount Calvary established its not-for-profit tax exempt status, its ownership of the parking areas, and the fact that the lots were not leased or used for profit. Mount Calvary bore the burden of proving that the parking lots were used as part of a use for which an exemption is provided. Though the record lacks clarity, specificity, and detail concerning the precise use of each parking area, it does contain testimony and findings of fact as to the parking lots' general use. With respect to the parking lots, the ALJ determined that Mount Calvary used "the main and other adjacent parking lots 'most of the time' " when conducting its various activities and used the main parking lots to congregate for field trips held at various times during the 1991 tax year. When asked whether during 1991, given its various activities, the church used all of its parking facilities, Peters answered: "Not all of the time, but most of the time." Peters also testified that church buses remained parked there when not in use. The findings of the ALJ, together with the evidence presented by Mount Calvary, demonstrate that the parking lots deemed not entitled to exemption by the ALJ were used as part of a use for which an exemption is provided by

this Code and are entitled to exemption from taxation under section 19.16 for the 1991 tax year.

■ Finally, we turn to the circuit court's decision to affirm the ALJ's recommendation that the storage building was not entitled to exemption for the 1991 tax year. Mount Calvary complains that the ALJ's determination as to the storage building was against the manifest weight of the evidence. In *MacMurray College v. Wright*, 38 Ill. 2d 272, 230 N.E.2d 846 (1967), our supreme court considered whether faculty and staff housing facilities were used exclusively for school purposes and exempt from taxation. In so doing, our supreme court explained that an "[e]xemption will be sustained if it is established that the property is primarily used for purposes which are reasonably necessary for the accomplishment and fulfillment of the educational objectives, or efficient administration, of the particular institution." *MacMurray College*, 38 Ill. 2d at 278, 230 N.E.2d at 850.

Using the *MacMurray* standard, Illinois courts have held that property used as hospital administrative and support services, property used as a hospital employee parking lot, surrounding gang-infested property reclaimed by a hospital, and property used as a child-care center serving employees of a tax-charitable hospital all qualify for the property tax exemption. See *Evangelical Hospital Ass'n v. Novak*, 125 Ill. App. 3d 439, 443, 465 N.E.2d 986, 988 (1984); *Memorial Child Care v. Department of Revenue*, 238 Ill. App. 3d 985, 992-93, 604 N.E.2d 530, 535 (1992); *Norwegian American Hospital, Inc. v. Department of Revenue*, 210 Ill. App. 3d 318, 324, 569 N.E.2d 83, 87 (1991) (concluding that under the "reasonably necessary" test, hospital need not prove that subject parcels involved activity that directly related to the healing of patients in order to receive tax exemptions for the properties); *Northwestern Memorial Foundation v. Johnson*, 141 Ill. App. 3d 309, 313, 490 N.E.2d 161, 164 (1986) (judicial notice taken that hospital's location necessitated adequate employee parking).

The ALJ found that the record established the building was "unsuitable for regular use during the 1991 tax year" and concluded that, because its condition mirrored that found in *Antioch*, it was not in exempt use during 1991. Applying the *MacMurray* standard to the storage building, the ALJ further explained that Mount Calvary had failed to show how the storage facility furthered its exempt purpose and concluded that the storage building was not reasonably necessary to further Mount Calvary's exempt operations during the tax year 1991.

■ We conclude that the ALJ's recommendation as to the storage building is against the manifest weight of the evidence. First, the

testimony of Peters and Johnson was not inconsistent. Their testimony established that though access to the building was limited, the building was used for storage, with certain persons going in and out to store and to retrieve items. Specifically, Mount Calvary demonstrated that it used the storage building during the 1991 tax year for the purpose of storing desks, chairs, and air conditioners. The ALJ found that Mount Calvary did use the facility to store materials related to church and school purposes throughout the 1991 tax year and that it allowed certain persons to go into the facility on an intermittent basis.

In this regard, the evidence presented by Mount Calvary is analogous to the evidence of storage presented in *Our Savior*, which a panel of this court concluded established entitlement to exemption. See *Our Savior*, 204 Ill. App. 3d at 1057, 562 N.E.2d at 1199 (exemption granted for church and office portions of building used for storage of church property). Our supreme court has recognized that, in the context of exemption, the uses of property " 'are necessarily relative' " and " 'usually are not absolutely essential,' " but depend upon the facts and circumstances of each case. *People ex rel. Pearsall*, 311 Ill. at 16, 142 N.E. at 522, quoting *Knox College v. Board of Review*, 308 Ill. 160, 165, 139 N.E. 56, 57 (1923). Here, the evidence in the record established that the fire in the church disrupted the operation of Mount Calvary's Christian Academy and necessitated the relocation of church services and activities to the academy building. The record further established that the storage building was actually used during the 1991 tax year to store Mount Calvary's property: desks, chairs, and air conditioners. The evidence demonstrates that, so used, the storage building facilitated the congregation's efforts to keep its church services, activities, and community outreach programs ongoing after the fire.

Therefore, we conclude that, in keeping with the *MacMurray* standard, Mount Calvary established that the storage building was primarily used for purposes reasonably necessary for the accomplishment and fulfillment of the congregation's aims of worship and religious instruction, or the efficient administration of Mount Calvary Baptist Church, during the 1991 tax year. See *MacMurray College*, 38 Ill. 2d at 278, 230 N.E.2d at 850. Consequently, the circuit court's decision to affirm that portion of the ALJ's decision that denied exemption for the storage building for the 1991 tax year was against the manifest weight of the evidence.

Reversed and remanded with directions.

HARTMAN and GREIMAN, JJ., concur.