PER CURIAM.
This is a consolidated appeal from judgments of the Tax Court which determined-that two churches owned by plaintiff Roman Catholic Archdiocese of Newark, located in the City of East *651 Orange, were exempt from real property assessments in 1994, 1995 and 1996. The court’s reasons for concluding that the properties were tax exempt during those tax years are set forth in a reported opinion. Roman Catholic Archdiocese of Newark v. City of East Orange, 17 N.J.Tax 298 (Tax Ct.1998).
Plaintiff is a religious corporation that operates under both civil law and the ecclesiastical law of the Roman Catholic Church, known as the Code of Canon Law (Canon Law). Plaintiff had five constituent parishes located in East Orange. Two of the parishes, Our Lady of the Most Blessed Sacrament (Blessed Sacrament) and Our Lady of All Souls (All Souls) were closed in 1993. The closing of the two parishes was prompted by changing demographics in East Orange and decreasing attendance at both parishes. Under Canon Law these parishes were “suppressed,” and under civil law they were dissolved. As a result, each parish conveyed its real property to the Archdiocese.
Plaintiff continues to operate the three remaining parishes in East Orange. It also provides immigration, social welfare and senior citizen services, organizes youth ministries, and operates a school program that starts in kindergarten and continues through twelfth grade.
The properties of the two closed parishes are used in conjunction with the operation of the three remaining parishes. The rectory at All Souls is used for some of the deanery meetings of the remaining parishes, which are meetings of the priests from the different parishes convened to discuss matters of common interest. A gymnasium at Blessed Sacrament is used for a Catholic Youth Organization basketball program. Both churches also are used for the storage of church records, such as baptismal records, and a substantial quantity of artifacts used in religious services, including stained glass windows, altars, pews, holy water fonts, processional candles and religious statues. These artifacts are made available to active parishes within the plaintiff Archdiocese, and the total inventory has decreased as artifacts are moved into the facilities of active parishes. In addition, a priest conducts a weekly mass in the churches of each closed parish. During the *652 tax years in question, plaintiff considered various proposals for making more intensive religious use of the All Souls and Blessed Sacrament properties, but none of those proposals had come to fruition as of the time of trial in December 1996.
In upholding plaintiffs tax exemption claim, the Tax Court relied primarily upon the fact that weekly masses are conducted in plaintiffs closed parish churches. The Tax Court conceived that the critical issue in the case was “whether a minimum level of activity is required to obtain a tax exemption for property used for religious worship or religious purpose.” 17 N.J.Tax at 305. The Tax Court concluded that “[t]o measure the quantum of religious use of a completed building as a condition of granting a tax exemption would engage the courts in an improper evaluation of religious practice.” Id. at 312; but cf. Grace & Peace Fellowship Church, Inc. v. Cranford Township, 4 N.J.Tax 391, 401-02 (Tax Ct.1982) (denying tax exemption based on finding that regular prayer services held at a church while under construction “did not constitute the primary or dominant purpose of congregants being in the building, but was secondary or incidental”). We conclude that the judgments upholding plaintiffs tax exemption claims may be affirmed without reaching the question addressed by the Tax Court concerning the quantity of religious use of the churches, or whether the Masses plaintiff conducts on the properties, which are not ordinarily attended by members of the public, would be sufficient, by themselves, to entitle plaintiff to exemptions.
N.J.S.A. 54:4-3.6 provides:
The following property shall be exempt from taxation under this chapter: ... all buildings actually and exclusively used for ... religious worship ... all buildings actually and exclusively used in the work of associations and corporations organized exclusively for religious ... purposes ... the land whereon any of the buildings hereinbefore mentioned are erected, and which may be necessary for the fair enjoyment thereof, and which is devoted to the purposes above mentioned and to no other purpose and does not exceed Sve acres in extent____ The foregoing exemption shall apply only where the association, corporation or institution claiming the exemption owns the property in question and is incorporated or organized under the law's of this State and authorized to carry out the purposes on account of which the exemption is claimed____
*653 To qualify for an exemption under N.J.S.A. 54:4-3.6, a corporation, association or institution must show that (1) it is organized exclusively for a tax exempt purpose; (2) its property is “actually and exclusively” used for the tax exempt purpose; and (3) its operation and use of its property is not conducted for profit. Paper Mill Playhouse v. Millburn Township, 95 N.J. 503, 506, 472 A.2d 517 (1984).
The City does not dispute that the Archdiocese is organized exclusively for religious purposes, and it does not allege that the Archdiocese’s use of the All Souls and Blessed Sacrament properties is for profit. Consequently, the only issue presented in this appeal is whether those properties were actually and exclusively used for religious purposes during 1994,1995 and 1996.
The test for determining whether a property is actually and exclusively used for a tax exempt purpose is “whether the property is ‘reasonably necessary’ for such [tax exempt] purposes.” City of Long Branch v. Monmouth Med. Ctr., 138 N.J.Super. 524, 532, 351 A.2d 756 (App.Div.1976), aff’d o.b., 73 N.J. 179, 373 A.2d 651 (1977). Applying this test, the court in Man-mouth Medical Center concluded that “[t]he furnishing of housing facilities to resident physicians, interns and nurses on [a] hospital staff [was] reasonably necessary for the proper and efficient operation of the hospital[,]” and consequently, those facilities were entitled to the exemption from taxation provided for property “actually and exclusively” used for hospital purposes. Id. at 533, 351 A.2d 756; see also Pingry Corp. v. Township of Hillside, 46 N.J. 457, 463-65, 217 A.2d 868 (1966); Toivnship of Princeton v. Tenacre Found., 69 N.J.Super. 559, 565, 174 A.2d 601 (App.Div.1961). More directly relevant to this case, we held in Blair Academy v. Township of Blairstown, 95 N.J.Super. 583, 232 A.2d 178 (App.Div.), certif. denied, 50 N.J. 293, 234 A.2d 401 (1967), that a storage building for equipment used to maintain the buildings and grounds of a private school was “essential to the maintenance” of the school and therefore “actually used” for tax exempt school purposes. Similarly, the former Division of Tax Appeals concluded that a rectory used in part for the storage of church *654 property was actually and exclusively used for religious purposes. In re City of East Orange v. Church of Our Lady of the Most Blessed Sacrament, 25 N.J.Misc. 58, 60, 50 A.2d 390 (Div. of Tax Appeals 1946).
The courts in Illinois have reached the same conclusion with respect to church-owned properties used for the storage of materials needed for a church to carry out its mission. See Mount Calvary Baptist Church, Inc. v. Zehnder, 302 Ill.App.3d 661, 236 Ill.Dec. 134, 706 N.E.2d 1008, 1017 (1998) (holding that church building damaged by fire that was used to store desks, chairs and other materials related to school and church purposes was dedicated to tax exempt religious purposes because it “facilitated the congregation’s efforts to keep its church services, activities and community outreach programs ongoing after the fire.”); Our Savior Lutheran Church v. Department of Revenue, 204 Ill.App.3d 1055, 150 Ill.Dec. 395, 562 N.E.2d 1198, 1201 (1990) (holding that church building that was no longer used for worship services was nevertheless tax exempt property used exclusively for religious purposes, because it was used for storage of church property and paraphernalia, including church records, pews, hymnals, altar, cross, pipe organ and-other furnishings, as well as for occasional bake sales and flea markets), appeal denied, 136 Ill.2d 546, 153 Ill.Dec. 376, 567 N.E.2d 334 (1991).
Similarly, we conclude that the use of the Blessed Sacrament and All Souls church properties for the storage of religious artifacts and records, meetings of priests from different parishes and Catholic Youth Organization basketball was an integral part of the operations of the active parishes and thus “reasonably necessary” for the Archdiocese's religious purposes. Moreover, these religious uses of the properties were not merely de minimis. Indeed, the record indicates that a substantial quantity of religious artifacts are stored in both church buildings. We also are mindful of the fact that the All Souls and Blessed Sacrament properties were used as active churches until 1993 and that the current religious uses to which the properties are devoted are interim only, because the Archdiocese intends either to implement a *655 proposal for more intensive religious uses of the properties or to sell them. Under these circumstances, we are satisfied that the Blessed Sacrament and All Souls properties continued to be actually and exclusively used for religious purposes during 1994, 1995 and 1996.
We perceive no need in this case to decide whether religious worship services which are conducted in a manner that is not reasonably calculated to attract attendance by members of the public would be sufficient to qualify the church properties for tax exemption under N.J.S.A. 54:4-8.6 even if those properties were not being used for other religious purposes.
Affirmed.