**NOT FOR PUBLICATION WITHOUT THE APPROVAL OF
THE TAX COURT COMMITTEE ON OPINIONS**

|  |  |  |
|---|---|---|
| **Options Imagined,** | : | TAX COURT OF NEW JERSEY |
| A NJ Nonprofit Corporation**,** | : | DOCKET NOS.: 010456-2020; |
|  | : | 009577-2021; 007910-2022 |
| Plaintiff, | : |  |
|  | : |  |
| v. | : |  |
|  | : | Approved for Publication |
| **Parsippany-Troy Hills Township**, | : | In the New Jersey |
|  | : | Tax Court Reports |
| Defendant. | : |  |
|  | : |  |

Decided:  October 31, 2022

Robert B. McBriar for plaintiff (Schneck, Price, Smith, & King, LLP., attorneys).

Richard P. DeAngelis for defendant (Connell Foley LLP., attorneys).

BIANCO, J.T.C.

This is the court's formal opinion concerning property tax exemption eligibility pursuant to N.J.S.A. 54:4-3.6, for tax years 2020, 2021, and 2022,[1] of property owned by plaintiff, Options Imagined, a NJ Nonprofit Corporation (Options), located at 2467 Route 10, Apt. 18-A1, Parsippany-Troy Hills Township,

---

[1] When the Township filed its motion in March 2022, it included tax years 2020 and 2021 as those were the only appeals then pending in the Tax Court. On June 8, Options timely filed its complaint challenging the denial of the exemption for the current tax year. Thereafter, on July 12, Options filed its opposition to the Township's Motion for Summary Judgement and Cross-Motions for Summary Judgement that included tax year 2022. In filing its reply brief and opposition to Options' Cross Motion on August 15, the Township failed to include reference to tax year 2022. Both parties have confirmed in writing that the Court's consideration of the pending Motion for Summary Judgement and Cross-Motion for Summary Judgement should be for all years under appeal as the material facts pertaining to all years are the same.

and designated by the taxing district as Lot 18.01 in Block 15.25 (Subject Property). Specifically at issue is whether the Subject Property is actually used in furtherance of Options' charitable purpose, and whether Options is operating in furtherance of its organizational purpose set forth in its bylaws. Defendant Parsippany-Troy Hills Township (Township) moved for summary judgment to dismiss Options' appeals of the Morris County Tax Board's denial of the Subject Property's charitable property tax exemption for all the years at issue. Options filed cross-motions for summary judgment entreating the court to grant the exemption.

For the reasons stated more specifically set forth herein, the court: (1) grants Options' cross-motions for summary judgment, finding that Options has met its burden of satisfying the elements of N.J.S.A. 54:4-3.6; (2) denies the Township's motion to dismiss Options' appeals; and (3) finds that Options is organized in furtherance of its Certificate of Incorporation.

## Statement of Undisputed Facts

The facts are not in dispute.[2] Options is a nonprofit New Jersey corporation and a Federal 501(c)(3) organization created in 2015 by Joseph DeSimone to provide support services to adults with intellectual and developmental disabilities. Options is managed by its five-member Board of Trustees. Mr. DeSimone serves as the President of the Board of Trustees.

---

[2] At argument, both counsel reaffirmed that no facts were in dispute in these matters.

2

In furtherance of its charitable purposes, Options provides various New Jersey Department of Human Services, Division of Development Disabilities (DDD) recognized services[3] to aid the moral and mental improvement of men, women, and children, as set forth in N.J.S.A. 54:4-36.  Pursuant to Options' amended Certificate of Incorporation, upon its dissolution, its assets will be distributed for tax exempt purposes within the meaning of Section 501(c)(3) or be distributed by federal, local, or state government for a public purpose.

The Subject Property is a residential two-bedroom condominium unit containing approximately 1,021 square feet of livable area; it was assessed for $150,000 for all years under appeal.[4]  In September 2019, Options purchased the Subject Property from its President Mr. DeSimone for $220,000.  The entirety of the Subject Property is exclusively used for independent living and rehabilitative services.[5]  Since Options purchased the Subject Property in 2019, Mr. DeSimone's autistic adult son was the only resident and lessee of one of the bedrooms.[6]  However, it is anticipated that an additional DDD participant will occupy the second

---

[3] Options provides services within the Subject Property and outside the Subject Property. The services include Community Based Supports (Supports Program), Community Inclusion Services, Day Habilitation, Individual Supports (Community Care Program), Prevocational Training, Respite, Support Coordination, Supported Employment, Support Brokerage, and Transportation.
[4] The property tax for the Subject Property for the relevant years is as follows: $4,626.00 in 2020, $4,756.50 in 2021, $4,894.50 in 2022.
[5] The Subject Property has operated at a loss for the preceding three years.
[6] The rent for the Subject Property for the relevant years is as follows: $1,390 in 2020, $1,483 in 2019.

bedroom at the Subject Property once his/her transition plans[7] are complete. Additionally, Options has the intention of acquiring and operating five group homes by 2025 in furtherance of its charitable purpose.

Before Options acquired the Subject Property, the current resident lived alone at the Subject Property and received Section 8 subsidies.[8] After the sale to Options, Mr. DeSimone transferred the Section 8 housing contract to Options. Additionally, Options receives in-home and service funding from various sources such as Medicaid Waiver Programs. The Subject Property's home expenses are derived from resident funds and state funded housing programs.[9] Options receives in-home and service funding from various sources such as Medicaid Waiver Programs. While the Subject Property itself is not yet approved by the DDD, the DDD has issued a Notice of Intent to License.[10]

Options, however, is approved and recognized by the DDD to provide services and support to adults with intellectual and developmental disabilities enrolled in

---

[7] The DDD's Planning for Adult Life Project assists students with intellectual and developmental disabilities and their families in transitioning into adulthood. Transition plans are created when a student moves from the school system into the adult service system. A transition plan identifies services that aids youth in achieving their ideal future life goals.

[8] The Division of Housing and Community Resources (DHCR) Section 8 Housing Program is a Housing Voucher program that assists low-income households in paying rent by reducing housing costs through direct subsidy payments to landlords.

[9] Supportive Housing Vouchers from NJ Supportive Housing Alliance, and State Rental Assistance Programs (SRAP). SRAP is a state funded program that provides housing subsidies to very low-income New Jersey Residents. From September 2019 through December 2019, Options received SRAP subsidies totaling to $31,293.

[10] Once the Subject Property is licensed by DDD, funding will be received in the form of Supportive Housing Vouchers from the Supportive Housing Alliance.

various Medicaid Waiver programs.  Options provides twenty-four-hour support services at the Subject Property to enable DDD participants to live in the community. The current resident is enrolled in CCP and receives funding through programs administered by the DDD.[11]  The current resident is cared for fulltime by four trained Options individual support employees at the Subject Property as outlined in his approved New Jersey Individual Service Plan (ISP).[12]  Individual support services are direct aid to individuals in achieving an independent lifestyle.  These services include assistance in performing everyday tasks, such as the development of social skills and basic self-care.  Options provides individual support services only to CCP participants in the Subject Property as well as other locations within twenty-one counties in New Jersey.  The DDD listed Options as a Support Coordination (SC) agency, specifically as a released agency.[13]  Support Coordination is a DDD funded service that assists DDD participants in gaining access to needed programs and State plan services.

**Applicable Law**

---

[11]  The DDD developed and operates two Medicaid waiver programs: (1) The Supports Program (SP) and (2) The Community Care Program (CCP). The CCP is a DDD initiative that permits New Jersey to receive a federal match on a variety of approved waiver programs and supports Medicaid beneficiaries to live in the community and avoid institutionalization.

[12]  Each CCP participant must have an Individualized Service Plan (ISP) developed according to the standards specified in the CCP policy manual and the Support Coordination Orientation.

[13]  Released agencies are agencies authorized to have their SC approve their own service plans because they met a minimum standard of delivering quality service plans. Therefore, released agencies do not have to submit service plans to the DDD for review and approval.

A motion for summary judgment should be granted in the absence of genuine issues of material facts. R. 4:46-2(c); Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 528-29 (1995) (summary judgment will be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law"). Denial is appropriate only where the evidence is such that reasonable minds could return a finding favorable to the party opposing the motion. Id. at 534, 540.

"In a proceeding in the Tax Court there is a presumption of correctness in favor of the County Board judgment which must be overcome by plaintiff's introduction of sufficient competent evidence." Glen Wall Assoc. v. Wall Twp., 6 N.J. Tax 24, 28 (Tax 1983), rev'd on other grounds, 99 N.J. 265 (1985).

"Exemption [from taxation] is justly sustained only upon the principle that the concession is due as quid pro quo for the performance of a service essentially public, and which the state there-by is relieved pro tanto from the necessity of performing." Roman Catholic Archdiocese of Newark v. East Orange City, 17 N.J. Tax 298 (Tax 1998). When making charitable exemption decisions, "it is the use of the property, not the status or character of its owner, that determines exemption." Emanuel Missionary Baptist Church v. City of Newark, 1 N.J. Tax 264, 268 (Tax 1980).

N.J.S.A. 54:4-3.6 provides in pertinent part that:

> The following property shall be exempt from taxation . . . all buildings actually used in the work of associations and corporations organized exclusively for the moral and mental improvement of men, women and children, provided that if any portion of a building used for that purpose is leased to profit-making organizations or is otherwise used for purposes which are not themselves exempt from taxation, that portion shall be subject to taxation and the remaining portion only shall be exempt.
>
> [N.J.S.A. 54:4-3.6]

While value determinations by County Boards generally enjoy a presumption of validity, MSGW Real Estate Fund, LLC v. Borough of Mountain Lakes, 18 N.J. Tax 364, 373 (Tax 1998), "the determination of an exemption is more properly one of statutory and case law interpretation than one requiring any special expertise possessed of an assessor[;] . . . 'statutory construction is ultimately a judicial function.'" Hertz v. Borough of Lincoln Park, 31 N.J. Tax 1, 12 (Tax 2019) (quoting O'Rourke v. Fredon, 25 N.J. Tax 443, 450 (Tax 2010)). "[T]ax exemption cases . . . are necessarily limited to their facts and are not controlling." AHS Hosp. Corp. v. Town of Morristown, 28 N.J. Tax 456, 499 (Tax 2015) (citing Int'l Schs. Servs., Inc. v. West Windsor Twp., 207 N.J. 3, 22 (2011)).

"The Supreme Court of New Jersey has set forth three criteria for whether a property qualifies for exemption under N.J.S.A. 54:4-3.6: (1) the owner of the property must be organized exclusively for the tax-exempt purpose; (2) the property

7

must be actually used for the exempt purpose; and (3) the operation and use of the property must not be conducted for profit." Borough of Hamburg v. Trs. of Presbytery of Newton, 28 N.J. Tax 311, 318 (Tax 2015) (citing Paper Mill Playhouse v. Millburn Twp., 95 N.J. 503, 506 (1984)).

Because "all property shall bear its just and equal share of the public burden of taxation[,]" "[s]tatutes granting exemption from taxation represent a departure and consequently they are most strongly construed against those claiming exemption." Princeton Univ. Press v. Borough of Princeton, 35 N.J. 209, 214 (1961). Accordingly, "[t]he burden of proving a tax-exempt status is upon the claimant." Ibid. However, "[t]he rule of strict construction must never be allowed to defeat the evident legislative design." Soc'y of the Holy Child Jesus v. City of Summit, 418 N.J. Super. 365, 373 (App. Div. 2011) (quoting N.J. Carpenters Apprentice Training & Educ. Fund v. Borough of Kenilworth, 147 N.J. 171, 177-78 (1996)).

When determining whether a property is actually used for a tax-exempt purpose, the Tax Court evaluates whether the property is "reasonably necessary" for such tax-exempt purposes. See Roman Catholic Archdiocese of Newark v. East Orange City, 18 N.J. Tax 649, 653 (App. Div. 2000) (citing City of Long Branch v. Monmouth Med. Ctr., 138 N.J. Super. 524, 532 (App. Div. 1976), aff'd, 73 N.J. 179 (1977)). When applying this test, the Court has held that "necessary" is not

interpreted to mean "absolutely indispensable." Boys' Club of Clifton, Inc. v. Twp. of Jefferson, 72 N.J. 389, 401 (1977). Eligibility for exemption is determined as of October 1 of the prior tax year. See Catholic Relief Servs., U.S.C.C. v. South Brunswick Twp., 9 N.J. Tax 25, 26-7 (Tax 1987), aff'd, 9 N.J. Tax 650 (App. Div. 1987).

**Analysis**

While property tax exemption determinations pursuant to N.J.S.A. 54:4-3.6 are inherently and typically fact sensitive, see AHS Hosp. Corp., 28 N.J. Tax at 499 (citing Int'l Schs. Servs., Inc., 207 N.J. at 22), the court finds that summary judgment is appropriate in the present matters as there are no genuine disputes of material facts. Both parties agree that Options is using the property to care for the current resident and that Options is a nonprofit corporation organized for the moral and mental improvement of individuals in accordance with N.J.S.A. 54:4-3.6. Furthermore, the parties are in accord that Options is not using the Subject Property for profit. At issue, is the second prong of the Paper Mill test, i.e., whether the Subject Property is actually used in furtherance of its organizational purpose. Additionally, despite the parties having stipulated to Options organizational elements, the Township focused its argument on whether Options satisfied its charitable purpose by providing services to the public, given that Mr. Desimone's son was the only former and current resident of the Subject Property.

9

### 1. The Use Test

For Options to meet the requirements under the use test, it must demonstrate that the Subject Property is "reasonably necessary for the accomplishment, and an integral part, of the taxpayer's activities in pursuit of a function forming the basis of an exemption under N.J.SA. 54:4-3.6." Fountain House of New Jersey v. Montague Twp, 13 N.J. Tax 387, 402 (Tax 1993) (citing Long Branch v. Monmouth Med. Ctr., 138 N.J. Super. 524, 532 (App. Div. 1976), aff'd, 73 N.J. 179 (1977)).

Options contends that the Subject Property is entitled to tax exempt status because it is used in providing Mr. DeSimone's son with DDD approved services and support, which use is consistent with Options' charitable purpose. The Township disputes whether Options actually used the Subject Property in furtherance of its charitable purpose as of the relevant assessing dates. To that argument the Township asserts that because the Subject Property is not available to the public but rather, available only to the son of Options' President, Options does not render a charitable benefit to the public. Accordingly, in the Township's view, exemption of the Subject Property is inappropriate.

The court finds that Options satisfied all the requirements for tax exemption. It is clear the Subject Property was used to provide the current resident with housing and DDD approved support services. This court has previously recognized that property used to house and provide substantial supportive services that encourage an

independent lifestyle meets the standard for property tax exemption under N.J.SA. 54:4-3.6.  See Community Access Unlimited, Inc. v. City of Elizabeth, 21 N.J. Tax 604 (Tax 2003) (where the court granted a charitable tax exemption to Community Access, an organization that provided housing and supportive services to individuals with mental disabilities, finding that, similar to Options, its goal was to aid persons with mental disabilities in leading an independent lifestyle).

The Subject Property is reasonably necessary and integral to the care and well-being of the current resident and provides him with the ability to lead an independent lifestyle within the community.  The current resident receives assistance with community-based activities and aid in performing everyday tasks.  Furthermore, Options is not limited to only housing Mr. DeSimone's son.  An additional DDD participant is anticipated to reside in the Subject Property and receive similar support services based on his or her ISP.  When Mr. DeSimone's son is no longer a resident, the Subject Property will continue to be reasonably necessary and integral to the care of other DDD participants.  Both bedrooms at the Subject Property can continue to be leased by DDD participants in need of housing and supportive aid.  Accordingly, the Court finds that Options does satisfy the requirements of the use test.

**2. Public Use**

There is nothing in the case law or controlling statutes to suggest that Options' undisputed use of the property does not satisfy the requirements for exemption.

While it is well settled that property tax exemption is an exception that must be strictly construed against the party seeking exemption, see Soc'y of the Holy Child Jesus, 418 N.J. Super. at 373, there is no requirement for an organization to be open to the general public and utilized by more than one individual at any given time. See Princeton Univ., 35 N.J. at 214. Furthermore, it is not pertinent to the requirements of either the use test or N.J.S.A. 54:4-3.6 that Mr. DeSimone's son is the sole resident. The Township's argument that Options is ineligible for tax exemption because the Subject Property is not adequately used by the public conflates *public use* with *public purpose*.

It has been held that our courts should not strictly define either public purpose or public use; "to be serviceable it must expand when necessary to encompass changing public needs of a modern dynamic society." Roe v. Kervick, 42 N.J. Super. 191, 207 (1964). "The concept of public purpose is a broad one… it connotes an activity which serves as a benefit to the community as a whole, and which, at the same time is directly related to the functions of government. Moreover, it cannot be static in its implications." Ibid. "[T]he term "public use" defies absolute definition because it changes with varying conditions of society and changing conceptions of the scope and functions of government." Id. at 226.

Here, Options is absorbing some costs that the taxpayers would otherwise have to bear by caring for an individual with developmental disabilities. Current

available funding resources do not provide Options with full housing funds; Options operates at a loss, and resident funds contribute to a portion of the Subject Property's expenses. The fact that there has been only one individual living at the Subject Property does not change the fact that Options is bearing a cost that the State must otherwise pay for the care of the current resident. Moreover, our jurisprudence has long established that a quantum of use is not required for a property to be tax exempt; nor is there any certain amount of benefit or relief from public expenses that must be met. See Roman Catholic Archdiocese of Newark, 17 N.J. Tax at 311 (reasoning that "no courts in this state have ever suggested that the quantum, regularity, or consistency of religious activity are necessary prerequisites to [tax exemption]").

Options offers housing and supportive services to individuals who might otherwise be institutionalized at a higher cost to the public and provides them with a safe setting in which to thrive.[14] The Tax Court has found that organizations similar to Options are "playing a role in fulfilling an articulated State policy of

---

[14] "The average cost to maintain one state hospital bed is $146,000 per annually. Almost half of the State's mental health budget (or $483 million dollars ) pays for the cost of caring for an average 3,300 patients in State and County facilities on any given day. Given that almost half of the State hospital patients are clinically ready for discharge, housing them in State hospitals is very expensive. Without a local system of care to coordinate an array of services and supports for persons who are seriously mentally ill, again, if we do nothing, the Task Force finds a significant number of State hospital beds (400) would need to be added given current admission, discharge and average daily population trends. Such a use of institutional care would be unfortunate and inappropriate. The lost potential in human terms is incalculable. Lives have been lost, spirits broken and families devastated." 2005 Task Force on Mental Health Final Report, p. 6, available at THE FINAL EXEC SUMMARY 3 30 05 B.itb.doc (nj.gov); last visited Oct. 14, 2022.

deinstitutionalizing the mentally disabled." Advanced Housing, Inc. v. Twp. of Teaneck, 215 N.J. 549, 554 (2013) (citing Community Access Unlimited Inc., 21 N.J. Tax at 617). The Governor's 2005 Task Force on Mental Health Final report[15] revealed that the cost of institutionalizing one individual is far more exuberant than providing services in a residence. Ibid. Consequently, Options' existence relieves the state's financial burden of institutionalizing individuals.

This court rejects the Township's arguments that there is a specific public use requirement and refuses to find such in the penumbra of the jurisprudence concerning property tax exemption. Because Options is bearing a cost that the State would otherwise pay, this court is satisfied that Options is operating in satisfaction of the requisite public purpose.

### 3. Operating in Furtherance of Options' Organizational Purpose

While the parties have stipulated to the organizational elements, the Township's contention that Options was not created to provide residential services,[16] nevertheless suggests that Options is not acting within its organizational purpose. The court finds such a claim to be unfounded. While Options' Certificate of

---

[15] In 2005, the cost of maintaining one patient in a State psychiatric hospital was $146,000 per year, and in a group home $60,000 per year.
[16] The Township asserts as an undisputed fact that Options was not organized to provide residential services.

Incorporation does not explicitly state that its creation is to provide residential services, it broadly outlines that Options' primary purpose is to provide services and support to persons with intellectual and developmental disabilities as well as conducting any other activity necessary in achieving its charitable purpose.

The court is satisfied that the support services Options provides at the Subject Property are necessary in achieving its charitable purpose. The current resident, and potentially future residents, receive the daily supportive aid necessary to lead an independent lifestyle. The Court rejects the Township's argument and finds that Options is operating according to its organizational purpose.

### 4. Public Policy Argument

As this court has discussed at length in Life With Joy v. Twp. of Green, 32 N.J. Tax 580, 599-603 (Tax 2022), the legislature set forth an extensive statutory scheme through the DDD to provide for the caretaking of individuals with developmental disabilities. These elaborate government programs that are set up to fund the care and development of individuals with developmental disabilities proves the public benefit. When individuals and nonprofits act in accordance with state law and policy to care for individuals with developmental disabilities, they help relieve the state, and more importantly, the tax-paying public, from the financial cost of their care. The Supreme Court endorsed such reasoning when it cited a 2005 Task Force on Mental Health commissioned by Acting Governor Codey outlining the "dearth of

affordable housing that offer[s] comprehensive support services." Advanced Housing, Inc., 215 N.J. Super. at 554. The Court found that caring for "mentally disabled citizens, who otherwise would be dependent on government relief, is in furtherance of this State's express policy." Ibid.

This court is empowered to find coexistence amongst promulgated statutes and thus finds that if the Subject Property is used in furtherance of an organization's charitable goals and in furtherance of a public purpose such property will be exempt from taxation. Here, the court is satisfied that Options is actually using the Subject Property in furtherance of their charitable purpose in accordance with N.J.S.A. 54:4-3.6 and is thus exempt from taxation.

## Conclusion

Accordingly, the court finds that the Subject Property is actually used in furtherance of Options' charitable purpose and is thus exempt from taxation pursuant to N.J.S.A. 54:4-3.6 for the tax years at issue. The Township's motions for summary judgment are denied and Options' cross motions for summary judgment are granted. The Tax Court's judgment and Final Order consistent with this opinion will be uploaded to *eCourts*.